08 C 170

C

JUDGE ST. EVE
MAGISTRATE JUDGE COLE

**Wachovia Bank, National Association**

TERMS & CONDITIONS
FOR GLOBAL FINANCIAL
INSTITUTIONS





**WACHOVIA**

# Table of Contents

Introduction                                             1
Account Services                                         1
   Authorized Signatures                  1
   Facsimile Signatures                   1
   Statements                             1
   Review of Statements/Reconciliation    1
   Availability of Funds                  2
   Setoff and Security Interest           2
   Credit Interest                        2
   Overnight Investment of Excess Funds   2
   Debit Interest                         3
   Payment Terms/Compensation Methods     3
Electronic Transfers                                    3
   Authorization and Security Procedures  3
   Payment Orders                         4
   Execution of Payment Orders            4
   Cancellation and Amendment
   of Payment Orders                      4
   Payments in Currency                   4
   Cut-Off Times                          4
   Advice of Funds Transfers              4
   ACH                                    4
Check Services                                          5
   Check Disbursement Services            5
   Advice of Issuance                     5
   Stop Payments                          5
   USD Cash Letter                        5
   Final Credit Service                   7
   Global Check Clearing                  7
   USD and Foreign Check Collection       7

Trade Services                                          7
   Letters of Credit                      7
   Bank-to-Bank Reimbursements            7
   Documentary Collections                8
   Reimbursement Collections              8
Other Cash Management Services                          8
Courier Services                                        8
Miscellaneous                                           8
   Assignment of Terms & Conditions       8
   Conflicts/Disputes Involving the Account 8
   Confidentiality                        9
   Termination                            9
   Applicable Laws                        9
   Compliance with Law                    9
   Waiver of Jury Trial                   9
   Invalidity of Contract Provisions      10
   Indemnification                        10
   Liability                              10
   Waiver                                 10
   Legal Process                          10
   Correspondent's Representations,
   Warranties and Covenants               10
   Entire Terms & Conditions              11
   Use of Correspondent's Account         11
U.S. Legal Holidays                                     11

# Introduction

These Terms & Conditions form an agreement ("Terms & Conditions") between Wachovia Bank, National Association ("Wachovia") and each customer ("Correspondent") maintaining one or more U.S. Dollar denominated demand deposit accounts with Wachovia (all such accounts are herein called the "Account") in the United States of America (U.S.). For the purpose of these Terms & Conditions, a Correspondent is defined as a bank or nonbank financial institution holding an Account on Wachovia's books. By accepting this documentation, or by using the Account, the Correspondent agrees to be legally bound by these Terms & Conditions, as amended from time to time. Other terms and conditions contained in a separate agreement or service description between Correspondent and Wachovia related to certain account services provided by Wachovia shall apply to the Account also. All prior general terms and conditions are superseded by this document.

Wachovia reserves the right to amend these Terms & Conditions, and shall provide prior notice of such changes. Changes to these Terms & Conditions required by law or regulation will be implemented immediately otherwise upon reasonable notice to Correspondent.

# Account Services

## Authorized Signatures

Correspondent may set forth in a document to be provided to Wachovia the names, signatures and titles of all persons duly authorized and who have complete authority to bind Correspondent (subject to any limits described by Correspondent) in all transactions involving the Account, including, without limitation: to sign checks, drafts, instruments, bills of exchange, acceptances and/or other similar documents from Correspondent's Account(s); to endorse checks, instruments, drafts, certificates of deposit, bonds, and/or other evidences of indebtedness and orders payable to, owned or held by Correspondent; to accept drafts, acceptances, instruments and/or other evidences of indebtedness payable at or through Wachovia; to initiate payment orders and other orders for the movement of funds; to waive presentment, demand, protest, and notice of protest or dishonor of any check(s), instrument(s), draft(s), acceptances, instruments or other evidences of indebtedness made, drawn or endorsed by Correspondent; to give instructions to Wachovia regarding any of the foregoing, and otherwise to deal with Wachovia in connection with the foregoing activities and all transactions involving the Account (each such person being hereinafter sometimes referred to as an "authorized signer" or as an "authorized representative"). Correspondent is responsible for notifying Wachovia of any changes to the authorized signers. Wachovia will not be bound by any changes until receipt of a revised document.

Alternatively, Correspondent may utilize authenticated SWIFT message formats or other agreed upon message formats to communicate with Wachovia and Wachovia shall be entitled to rely upon all such messages as authorized by Correspondent.

## Facsimile Signatures

If Correspondent uses a facsimile signature or endorsement, whether by machine, stamp or otherwise, that is not made by a handwritten signature on any checks, drafts, notes or other negotiable instruments with or without a designation of the party making such signature or endorsement, Correspondent agrees that Wachovia may pay and charge Correspondent's Account for checks, drafts, notes or other similar documents bearing or purporting to bear the facsimile signature or endorsement of any person or persons required to sign, regardless of by whom or by what means the actual or purported facsimile signature or endorsement may have been affixed (whether or not authorized), and regardless of by whom or by what means the check, draft, note or other similar document was created (whether or not authorized). Wachovia is not liable for any use of a facsimile signature or endorsement device. If Correspondent uses a facsimile signature or endorsement, Correspondent bears the risk of any unauthorized use of Correspondent's facsimile method.

## Statements

Wachovia will provide Correspondent with detailed transaction and balance information electronically, through SWIFT, telex, Wachovia's proprietary PC or Web-based systems, courier or mail.

In addition, debit and/or credit advices will be sent to Correspondent either electronically or by mail or courier, at Correspondent's request, depending upon the service and/or product.

## Review of Statements/Reconciliation

Correspondent is responsible to promptly and carefully examine all transaction and balance information and to immediately notify Wachovia as soon as possible of any irregularities, alterations, erroneous payments or credits or other problems which occur in connection with the Account. All Account information contained in such statements (mail or electronic), including balance and transaction information, is considered correct unless Correspondent delivers to Wachovia written notification regarding any problems within 30 calendar days of the closing date of the statement month. Such notification must specifically describe the transaction and include photocopies of any relevant documents along with: (1) Correspondent's Account title and Account number, (2) dollar amount of the transaction, (3) Wachovia transaction reference, if available, (4) Correspondent transaction reference and (5) the nature of the problem.

1.

Wachovia's customer service units are available for inquiries on specific transactions regarding posted entries and/or transactions that were not entered in Correspondent's Account when expected. Wachovia abides by the rules and guidelines of the International Financial Services Association and the New York Clearing House Association L.L.C. and its subsidiary companies with regard to the payment of interbank compensation. Wachovia reserves the right to make a final reasonable determination, whether and in what amount an adjustment, if any, shall be made.

If Correspondent is able to prove that Wachovia failed to exercise ordinary care in paying any unauthorized transaction and that Wachovia's failure directly and substantially contributed to the loss, then the loss will be allocated between Wachovia and Correspondent based on the extent to which Wachovia's respective failure to exercise ordinary care contributed to the loss. In that regard, and as disclosed elsewhere in these Terms & Conditions, Wachovia processes checks and other items by automated means and does not visually examine or verify signatures on all checks or other items. Correspondent agrees that Wachovia does not fail to exercise ordinary care because Wachovia uses these automated procedures. Correspondent also agrees that Wachovia does not fail to exercise ordinary care if the items were forged or altered in such manner (as by unauthorized use of a facsimile machine, photocopy machine, computer equipment or otherwise) that a reasonable person would not detect the forgery or alteration.

If Correspondent fails to discover and report these or any other errors or discrepancies within the 30 calendar day period, Correspondent loses any and all rights it may have to assert the error or discrepancy against Wachovia, regardless of whether Wachovia has exercised ordinary care with respect to the transaction.

## Availability of Funds

Deposits are subject to verification as to dollar amount and number of items. Each deposited item including cash letter items, and each other instruction, order, electronic funds transfer or advice received for credit to the Account is credited subject to final payment. Wachovia decides in its sole discretion what process will be used to obtain final payment of an item and may use other banks in the process. Provisionality or finality of an electronic funds transfer will be governed by the rules of the funds transfer system used in executing such funds transfer.

## Setoff and Security Interest

If Correspondent ever owes Wachovia, acting in any capacity, money as a depositor, borrower, guarantor, judgment debtor or in connection with any trade payment or otherwise, including any obligation owed

to a financial institution acquired by Wachovia, and it becomes due, Wachovia has the right under the law (called "setoff") and under these Terms & Conditions to use the money from Correspondent's Account to pay the debt. If the debt and the Account are in different currencies, Correspondent agrees that Wachovia may use the funds in the Account to purchase the currency of the debt at the then spot rate to setoff. Wachovia may use the Account to pay the debt even if the withdrawal results in an interest penalty or the dishonor of checks. In the case of both the Correspondent's head office and its branch(es) maintaining deposits with Wachovia, both the Correspondent's head office and its branch(es) agree that Wachovia may use the money in their individual Accounts to satisfy any one of their obligations.

Correspondent grants Wachovia a continuing lien and security interest in and right of setoff against all of Correspondent's right, title and interest in and to all deposits and accounts with any Wachovia offices located anywhere in the world to secure payment of Correspondent's obligations to Wachovia acting in any capacity. The security interest and right of setoff granted by these Terms & Conditions are consensual and are in addition to any other security interest or right of setoff that Wachovia may have. To the extent any of the funds to be setoff are entitled to any exemption from execution, levy, attachment, garnishment, seizure or other legal or equitable process, then, to the maximum extent allowed by law, Correspondent hereby knowingly, affirmatively and unequivocally waives such exemption and consents to Wachovia's setoff against such funds as contemplated by these Terms & Conditions. Any pledge or assignment by Correspondent to third parties of deposits (including, without limitation, certificates of deposit) and other accounts for security purposes remains subject to Wachovia's right of setoff and security interest.

## Credit Interest

Regulation Q of the Federal Reserve Bank of the United States of America currently forbids payment of interest on demand deposits. Overnight investment of excess funds can be arranged within the parameters set forth below.

## Overnight Investment of Excess Funds

Under parameters set forth between Wachovia and Correspondent, excess funds may be invested offshore overnight in Eurodollars in Wachovia's Cayman Islands branch. Correspondent acknowledges that deposits in the Cayman Islands branch are not insured by the Federal Deposit Insurance Corporation; nor are the deposits insured by the Unted States Government, the United Kingdom Government or any agency thereof. Deposits are not payable nor guaranteed payable in the United States.

2.

## Debit Interest

Wachovia reserves the right to refuse to pay any item if it would result in an overdraft on the Account. However, Wachovia, acting in its sole discretion, may pay an item and create an overdraft and charge interest for such an overdraft in accordance with Wachovia's policy or in accordance with prior arrangements made between Wachovia and Correspondent.

Unless otherwise agreed in writing, Wachovia is under no obligation to permit any overdraft or to continue to permit any overdraft and may at any time require payment of an outstanding overdraft.

The amount of any overdraft which Wachovia permits to occur, i.e., the difference between the amount of the debit plus all applicable service charges or fees, if any, and the available balance in the Account, shall be due and payable immediately and interest shall accrue thereon until paid in full at a rate determined by Wachovia not to exceed the maximum lawful rate of interest. Correspondent authorizes Wachovia to charge the Account or any other accounts of Correspondent with Wachovia or to apply any other property of Correspondent in Wachovia's possession or in which Wachovia has a security interest to satisfy such overdraft and applicable interest.

## Payment Terms/Compensation Methods

### Rates and Payment Terms

Payment for the services shall be at Wachovia's rates in effect from time to time as agreed upon by both Wachovia and Correspondent.

Correspondent's Account will be charged for services through Account Analysis, an automated system, which calculates charges for balance and fee-based account services. Payment will be made by Correspondent as mutually agreed, by either direct charges or compensating balances.

There are three basic options available to Correspondent in deciding how to compensate Wachovia for the services provided. These are described below:

### Balance Compensation

Positive available balances, adjusted for reserves, would be valued at an earnings credit rate. The appropriate level of balances would be left in the Account by Correspondent at all times to cover the cost of services.

### Fee/Balance Compensation

Wachovia will provide Correspondent with a comprehensive statement which includes volumes, prices and the total service charge. The total service charge is reduced by the interest Wachovia earns on the available balances maintained in Correspondent's Account. This earnings credit is calculated monthly as follows:

$$\frac{(\text{Positive Available Balance} - \text{Reserve Requirement}) \times \text{Earnings Credit Rate} \times \text{\# of Days in Month}}{\text{\# of Days in a Year}}$$

The earnings credit rate utilized in the calculation is a managed rate determined by Wachovia. This rate is market driven and allows Correspondent to receive a high earnings credit to offset service cost. If the earnings credit is less than the total service charge, the shortfall is billed to Correspondent's Account.

### Fee Compensation

Wachovia offers a fee option for all services provided. With this option, Correspondent may pay for all services on a monthly basis. Wachovia will debit the Account.

For all options, charges are detailed in the Account Analysis Statement, which Correspondent will receive on a monthly basis.

# Electronic Transfers

## Authorization and Security Procedures

All payment orders will be transmitted to Wachovia in compliance with Security Procedures as set forth below established between Wachovia and Correspondent. Correspondent will disclose Security Procedures only to its authorized representative(s) and establish internal controls to protect them from unauthorized disclosure. Wachovia will change Security Procedures immediately at Correspondent's request if Correspondent knows or suspects that they have become known by unauthorized persons. Wachovia will be entitled to presume that all payment orders which comply with Security Procedures are being transmitted by authorized representatives of Correspondent and Wachovia will be entitled to rely thereon. If Correspondent or any of the Correspondent's authorized representatives have reason to believe that a Security Procedure may have been learned by an unauthorized person, Correspondent agrees to notify Wachovia immediately.

The following Security Procedures will be used to verify that Correspondent is the originator of a payment order, or other communication requesting an amendment, cancellation or other action regarding a payment order for the communications systems listed on the next page:

3.

- For SWIFT, the SWIFT Authentication procedure in accordance with the SWIFT User Handbook as amended from time to time.
- For telex, the Wachovia test key or Correspondent's test key, as applicable.
- For PC and Web-based systems, the security procedure set forth in the applicable service agreement or service description between Wachovia and Correspondent.

Any other security procedures, including signature verification, that are not adequate under Article 4A of the Uniform Commercial Code of the State of New York should not be utilized by Correspondent. However, if Wachovia agrees to process payment orders that Correspondent delivers to Wachovia without using approved security procedures, Wachovia will not bear any responsibility or liability for any losses arising from processing such payment orders.

## Payment Orders

Correspondent may instruct that Wachovia **debit** Correspondent's Account and transfer funds for its own account, to other financial institutions, or pay third parties at other domestic or foreign financial institutions. If Wachovia receives a payment order from Correspondent to debit another account other than the Correspondent's own, Wachovia presumes that Correspondent has obtained the authorization to debit the account from the legal account holder and shall debit the account mentioned in the payment order. Payment orders may be transmitted to Wachovia in accordance with the terms set forth herein. Correspondent shall select and advise Wachovia of the means Correspondent will use of communicating payment orders, which may include SWIFT, telex and Wachovia's PC and Web-based systems.

## Execution of Payment Orders

Upon receipt of a payment order from Correspondent authenticated in accordance with the procedures contained herein, Wachovia is authorized to debit Correspondent's Account and transfer or pay funds upon value date. Wachovia is authorized to implement any instructions, including amendments and cancellations of prior payment orders, received (in accordance with the Security Procedures) according to Correspondent's initial payment order. Duplicate payment orders initiated by Correspondent may be acted upon by Wachovia without responsibility. Acceptance of payment orders is at Wachovia's sole discretion. Wachovia requests that Correspondent does not send payment orders more than 10 calendar days in advance. Unless otherwise instructed by Correspondent, Wachovia may use any means, intermediaries or funds transfer systems which may have operating rules governing the execution of payment orders to effect the transfer as Wachovia, in its sole discretion, shall determine. Wachovia may handle payment orders received from Correspondent and other customers in any order selected by Wachovia. Unless otherwise agreed, Wachovia is not responsible for any losses arising

from an execution of a payment order by a certain time of its funds transfer business day or for any losses arising from a conditional payment order.

## Cancellation and Amendment of Payment Orders

When Wachovia accepts a payment order, it cannot thereafter be cancelled or amended. Nonetheless, if Correspondent requests cancellation or amendment of an accepted payment order, Wachovia will attempt to cancel or amend, but this may require the consent of third parties.

## Payments in Currency

For orders of transfer of U.S. Dollars to a foreign country, the beneficiary's bank may elect to pay the beneficiary in foreign currency at the beneficiary bank's rate of exchange.

Payment orders in foreign currency are done at Wachovia's then current selling or buying market rate for wire transfers. If a payment order is cancelled or amended, any refund of currency resulting from these shall be in U.S. Dollars. Refunds of foreign currency orders shall be calculated at Wachovia's then current selling or buying rate for U.S. Dollars. Correspondent bears all risk of loss due to fluctuation in the rate of exchange. No transfer fee shall be refunded. Correspondent is responsible for any charges related to cancellation or amendment of U.S. Dollar and foreign currency payment orders.

## Cut-off Times

For same day delivery, payment orders must be received before the cut-off time for funds transfers on a business day as established by Wachovia from time to time. Payment orders or related requests received after the cut-off time or on a non-business day will be treated as received by Wachovia on Wachovia's next funds transfer business day. Wachovia will make reasonable efforts to execute all payment orders received prior to the cut-off deadlines.

## Advice of Funds Transfers

All debits and credits to the Account will appear on the SWIFT, PC, web, telex, courier or mail statements.

Optionally, Correspondent may request Wachovia to provide separate advices of debits/credits via SWIFT MT900 and MT910 messages, telex or mail.

## ACH

For ACH users, please refer to the Addendum to these Terms & Conditions, provided to Correspondent as a service description.

# Check Services

## Check Disbursement Services

Check Disbursements drawn on the Account will be debited on the date the item is presented to Wachovia. Wachovia encourages Correspondent to order checks through Wachovia. If Correspondent prefers to use its own vendor, Wachovia will provide Correspondent with detailed instructions on the required formats. A sample of the checks must be sent to Wachovia for inspection prior to their usage. Checks failing to pass inspection must be reprinted.

It is strongly recommended that the checks drawn on Wachovia be fully MICR (Magnetic Ink Character Recognition) encoded and include MICR-printed serial numbers. When checks are MICR encoded, serial numbers will appear on mail and electronic statements to assist Correspondent in identifying stolen or fraudulent items and in performing account reconciliation. Wachovia cannot be responsible for delays in posting of any item that is not fully MICR encoded.

## Advice of Issuance

Unless Correspondent and Wachovia have expressly agreed in writing that this requirement does not apply to Correspondent's Account, Wachovia requires that Correspondent promptly notify it whenever certain checks or drafts (described below) drawn on the Account are issued. If a failure to notify Wachovia of an issuance of check/draft results in a loss, such loss shall be borne by Correspondent. This notification is required for Correspondent's protection and in order to assist Wachovia in determining whether the specified checks or drafts drawn on the Account and presented for payment are forged or altered.

Correspondent shall send to Wachovia an Advice of Issuance either by authenticated SWIFT MT110 or tested telex for all checks issued in the amount of US$5,000 or greater. Each Advice of Issuance must include all the following specific details about the check or draft being issued by Correspondent:

· The date of the check or draft;
· The currency amount of the check or draft;
· The name of the payee (i.e., beneficiary) indicated on the check or draft; and
· The check number or draft number indicated on the check or draft.

Checks or other debit items drawn on the Account may be returned by Wachovia unpaid for any reason that such items are normally returned, for example, insufficient funds, uncollected funds, levies or attachments or for any other reason permitted by law and applicable regulations. Wachovia may also return a check or draft if no appropriate Advice of Issuance was received. In the case of insufficient or uncollected

funds, Wachovia may at its sole discretion return the item or elect to pay such items and overdraw the Account. Such overdrafts are subject to debit interest. Wachovia may pay drafts drawn on Correspondent's Account in any order Wachovia may choose.

## Stop Payments

Correspondent may ask Wachovia to stop payment on checks drawn on Correspondent's Account if Wachovia has not paid the item. Correspondent can request stop payments on checks drawn on the Account by authenticated SWIFT message or by tested telex. To be effective, the stop payment request must provide the exact amount of the check, check number, the exact date of check, payee and the full account number on which it is drawn. If the information Correspondent gives Wachovia is not correct or if Correspondent does not provide Wachovia reasonable information requested about the check, Wachovia will not be responsible to effect the stop payment.

Wachovia also cannot be responsible if Wachovia is not able to identify the proper check because: 1) Correspondent has issued more than one check with the same serial number or 2) Correspondent has generated its checks by computer or in any other manner which does not produce a MICR-encoded check number on the check.

Wachovia is entitled to a reasonable period of time within which to effect the stop payment order. For purposes of these Terms & Conditions, a "reasonable time" means until the end of the business day following the day on which the stop payment order was received by Wachovia. Wachovia is not liable for any checks paid against the Account until the stop payment is effected.

Stop payment orders are valid for six months unless Correspondent designates a longer period of time when placing the stop payment order. Correspondent may extend a stop payment order by notifying Wachovia via SWIFT or tested telex prior to the expiration of the existing stop payment order.

## USD Cash Letter

Wachovia agrees to receive USD Cash Letter shipments from Correspondent delivered to Wachovia at its designated offices. Items eligible for USD Cash Letter deposits include:

· U.S. Dollar commercial checks drawn on banks in the United States or Canada;
· U.S. Dollar bank drafts payable in the United States;
· Money orders issued by bank in the United States ;
· International Postal Money Orders issued by the U.S. Postal Service;
· U.S. Dollar Travelers Checks drawn on institutions in the United States.

This service cannot be used to transport bank notes, coins or any type of negotiable securities. Items drawn on points outside of the United States should not be included in Cash Letter shipments, with the exception of U.S. dollar checks drawn on banks in Canada. All deposited items are subject to final payment.

*Availability of Funds*

For USD Cash Letters received prior to processing cut-off deadlines established by Wachovia, Correspondent will receive availability of all items in accordance with Wachovia's predetermined float availability assignments.

*Deposit Preparation*

Travelers Checks should be sorted into separate batches from all other acceptable items and deposited under separate deposit tickets. Items should be batched in lots of no more than 250 items with a separate tape listing for each. Batch totals should be listed on the pre-encoded Cash Letter deposit ticket, supplied by Wachovia; up to 3,000 checks may be deposited under one deposit ticket. An adding machine tape including batch amount total and account number must accompany each Cash Letter deposit. The total number of checks, for all batches, must also be recorded on the Cash Letter deposit ticket. Wachovia is not responsible for any loss related to cash letters for which deposit tickets are missing or improperly completed.

Correspondent must maintain appropriate records of the front and back of the check to enable prompt reconstruction of documents in the event of total loss in transit. Users of Wachovia's Cash Letter Service must be mindful that packages are exposed to the possibility of loss or damage.

Wachovia requires Correspondent to protect against unauthorized negotiation by properly endorsing all acceptable items specifically to the order of Wachovia Bank, National Association. The endorsement should be placed in black or dark ink on the back of each check so that the endorsement is wholly contained in the area 3.0 inches from the leading edge of the check and 1.5 inches from the trailing edge of the check. Optional information may be included provided the inclusion of such information does not interfere with the readability of the endorsement.

It is recommended that Correspondent include its account number and unique reference number within the endorsement of each check. If an alternate account number, other than the original depositing account, is to be used for return item processing, such instructions and the alternate account number must be included on the endorsement of each check. Wachovia shall use reasonable efforts to follow Correspondent's instructions in debiting returns to Correspondent's alternate account.

*Deliveries in Transit*

Unless prior arrangements have been made, Wachovia assumes no responsibility for Cash Letter packages with respect to pick-up or while en route to the designated check processing center. Wachovia is not responsible for the actions, omissions and/or negligence of the courier regarding failure to pick up the package or loss of the package or damage to its contents while in the possession of courier, or any late delivery or non-delivery of the package.

For the purpose of determining liabilities, Wachovia will not be deemed to have received or have any liability with respect to any item until the item has physically been received by Wachovia at the address of which we notify you from time to time.

If a Cash Letter shipment should be lost in transit between Correspondent and the receiving center for Wachovia, Wachovia agrees to provide Correspondent with provisional credit within 10 business days after its receipt of two legible copies (front and back) of each of the items which make up the lost remittances. Legible copies, properly indemnified, should be received by Wachovia not later than 45 calendar days after the original remittance(s) was/were lost. Wachovia will then, for a period of six months commencing on the date Correspondent's Account is provisionally credited, initiate an effort to collect on the copies of the original instruments. Correspondent will retain use of the full value of the remittances (subject to normal returns). At the end of the six month period, Wachovia will debit Correspondent's Account for the full value of any of the uncollected copies and will provide Correspondent with a list of all of the uncollected copies.

If Correspondent furnishes Wachovia with two legible copies of each item after the prescribed 45 calendar day period as described above, Wachovia, will attempt collection on the copies and pass credit due Correspondent on an item by item basis. After receipt of the copies, a collection effort will be made for a period of 60 calendar days at which time copies of files on any uncollected copies will be forwarded to Correspondent and Wachovia will close its files.

*Adjustments*

Cash Letters will be credited for the original amount. Errors, such as incorrectly listed or unlisted items, will be adjusted by debiting or crediting the Account under advice. Correspondent may elect to receive automatic SWIFT/telex advices for adjustments in any amount in addition to their inclusion on Correspondent's account statements.

Should an item be missing from Correspondent's remittance processed at Wachovia, Wachovia will notify Correspondent by telex or SWIFT. When an image of the missing item is available, Wachovia will credit Correspondent's Account and attempt to collect funds by entering the

image for collection and Wachovia will not charge the Correspondent's Account for a period of 60 calendar days after which Correspondent's Account will be charged pending any subsequent collection.

*Return Item Processing*

All items deposited by Correspondent with Wachovia which are returned unpaid for any reason will be returned to Correspondent as soon as possible. Wachovia will provide advice by SWIFT or telex of any unpaid item. Wachovia shall not redeposit any returned item under any circumstance in the Cash Letter Service. Correspondent's Account will be debited for the face value of the returned item, plus any applicable fees regardless of whether the Account has sufficient funds. Correspondent is liable for all returned items and drawee bank claims whether Correspondent's Account is open or has been closed.

## Final Credit Service

Wachovia provides a Final Credit Service under the terms of a separate agreement that can be provided to Correspondent upon request.

## Global Check Clearing

Wachovia provides Global Check Clearing services to act as Correspondent's clearing agent of foreign checks and drafts. Wachovia agrees to process foreign currency items drawn in the currency of the host country on a cash letter basis for USD equivalent credit to Correspondent's Account. Correspondent may also include USD items drawn on foreign countries in their Global Check Clearing deposit.

A list of currently eligible currencies and countries is provided at service implementation. The list of currencies accepted by Wachovia on a cash letter basis is subject to change without notice. Wachovia, at its sole discretion, may determine not to process any item submitted under the Global Check Clearing service.

Correspondent shall follow the deposit preparation procedures as defined under the "USD Cash Letter" section of this document using pre-printed Global Check Clearing deposit tickets that are provided by Wachovia.

Wachovia shall provide daily foreign exchange rates for each currency accepted under the Global Check Clearing service. Wachovia shall not be liable for the use of any incorrect rate listed on Correspondent's deposit ticket, or any fluctuation in the foreign exchange rate due to courier delays in transit of the deposit.

Any deposited item returned for any reason will be charged back to Correspondent's Account at Wachovia's selling rate of the foreign currency. Return items are subject to the rules and regulations of the country where the payor bank is located.

## USD and Foreign Check Collection

Items received for collection shall not be credited to Correspondent's Account unless and until Wachovia has received payment therefore unless otherwise agreed upon. Collection items may be returned in accordance with prevailing law. Wachovia shall, as agent for Correspondent, send such items through its customary collection channels. All fees associated with the collection of such items will be deducted from the proceeds of the transaction prior to credit to Correspondent's Account.

# Trade Services

## Letters of Credit

Wachovia provides letter of credit services in accordance with International Chamber of Commerce Publication Number 500, entitled: *Uniform Customs and Practice for Documentary Credits* ("*UCP500*"), and the International Standby Practices, International Chamber of Commerce Publication Number 590 or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wachovia for use. Wachovia provides letter of credit services at its international processing centers in the U.S. and its overseas branch locations.

All letter of credit charges and associated assessments will be accumulated and charged to Correspondent's Account, unless otherwise indicated, on the date of payment/acceptance or at expiration. Communications will be via authenticated SWIFT, tested telex or original Letter of Credit mailed via courier authenticated by security procedures approved by Wachovia.

## Bank-to-Bank Reimbursements

Wachovia also provides reimbursement services in accordance with the International Chamber of Commerce Publication Number 525, entitled: *Uniform Rules for Bank to Bank Reimbursements under Documentary Credits* ("*URR525*"), or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wachovia for use. Authorizations to reimburse (Authorizations) and requests for reimbursement (Claims) can be sent via authenticated SWIFT, tested telex, courier or through the mail.

Wachovia is not responsible for authenticating any Claim received via means other than authenticated SWIFT or tested telex. Correspondent agrees that Wachovia may act upon a Claim received by Wachovia via such other means (e.g. by mail, courier, unauthenticated SWIFT, untested telex) without any responsibility or liability on Wachovia's part for the authenticity of such Claim.

## Documentary Collections

Wachovia acts as collecting agent for documentary collections. All documentary collections are subject to the International Chamber of Commerce Publication Number 522, entitled: *Uniform Rules for Collections ("URR522")*, or any subsequent revision or restatement thereof which may be as adopted by the International Chamber of Commerce and accepted by Wachovia for use.

Note: When any collection item is returned to Wachovia with a claim for refund because it bears an alteration, a forged or unauthorized endorsement or is otherwise not properly payable, Wachovia reserves the right to either charge Correspondent's Account for the amount of such claim or otherwise recover from Correspondent the amount Wachovia deems to be the liability due to such claim.

### Reimbursement Collections

Wachovia acts as agent for the purposes of presentation, tracing, and receipt of funds of documents and reimbursement claims under letters of credit in accordance with *URR525* and *URC522*.

Wachovia is not responsible for authenticating any reimbursement claim received via means other than authenticated SWIFT or tested telex. Correspondent agrees that Wachovia may act upon a claim received by Wachovia via such other means (e.g., by mail, unauthenticated SWIFT, untested telex) without any responsibility or liability on Wachovia's part for the authenticity of such claim.

## Other Cash Management Services

If Correspondent wishes to utilize Wachovia's other cash management services, Correspondent's selection and use of Wachovia's other cash management services are subject to these Terms & Conditions. The other cash management services are more fully described in separate service descriptions provided by Wachovia, both initially and at any time hereafter. Correspondent agrees that if any terms and conditions of the service descriptions conflict with the terms of these Terms & Conditions, the terms and conditions of the service description(s) shall control. Wachovia may change its operational procedures without amending these terms and conditions, upon notice to Correspondent. Wachovia has the right to modify services, require minimum balances or security, or terminate services in its sole discretion in the event that Correspondent breaches or fails to honor any provisions of these terms and conditions or there occurs a material adverse change in Correspondent's financial condition.

## Courier Services

Courier service is available to and from many countries to assure prompt and safe delivery in handling check remittances, US and foreign collections, and communications. Correspondent may prefer to make its own delivery arrangements.

Wachovia assumes no responsibility for packages with respect to pick-up or while en route including, but not limited to, security delays and customs clearance, or from Wachovia's designated operations center. Wachovia is not responsible for the actions, omissions and/or negligence of the courier with respect to failure to pick up the package or loss of the package or damage to its contents while in the possession of courier, or any late delivery or non-delivery of the package.

From time to time, it may be necessary for the courier to utilize alternative transportation methods. Wachovia, without liability on its part, reserves the right to authorize such action on a temporary basis without first consulting Correspondent and such action will not alter the limitation of Wachovia's liability as stated above.

## Miscellaneous

### Assignment of Terms & Conditions

These Terms & Conditions may be assigned by Wachovia in connection with a merger, deposit transfer or assumption, and to effect a setoff or realization upon collateral. Neither these Terms & Conditions nor an Account may be assigned or transferred by Correspondent, except in connection with a merger.

### Conflicts/Disputes Involving the Account

If Wachovia receives an actual or potential claim from a third party regarding Correspondent's Account, or conflicting instructions or claims from authorized signors, Wachovia may, at Wachovia's discretion and without liability to Correspondent, choose not to pay out any money from Correspondent's Account until Wachovia receives consistent instructions from all parties or a court order. Wachovia may also, without liability to Correspondent, close the Account and issue a check made payable to Correspondent and each authorized signor or Correspondent and each claimant, as Wachovia deems necessary, or Wachovia may interplead the funds into court. Correspondent agrees to reimburse Wachovia for any loss, costs or expenses including, without limitation, attorneys' reasonable fees and the costs of litigation (to the extent permitted by law) that Wachovia incurs as a result of any dispute involving Correspondent's Account, and Correspondent authorizes Wachovia to deduct any such loss, costs, or expenses from Correspondent's Account. This

obligation includes any dispute between Correspondent and Wachovia involving the Account and situations where Wachovia becomes involved in any dispute between Correspondent and an authorized signor, another joint owner or a third party claiming an interest in the Account. It also includes any situation where Correspondent, an authorized signor, another joint owner or a third party takes action with respect to the Account that causes Wachovia, in good faith, to seek the advice of counsel, whether or not Wachovia actually becomes involved in a dispute.

## Confidentiality

Wachovia shall treat Correspondent's information with confidence and discretion, but absent any agreement specifically to the contrary, Wachovia and its affiliates reserve the right to exchange among themselves information about Correspondent and its Accounts, to disclose such information to its service providers and to report any relevant information to credit reporting agencies. Wachovia may be required to disclose such information as required by legal and regulatory process or to prevent illegal or fraudulent activities.

Correspondent and, by signing any authorization documentation, all authorized signers and authorized representatives, authorize Wachovia to record telephone or other conversations between them and Wachovia. All decisions to record conversations, and to preserve or destroy such recordings, shall be within Wachovia's sole discretion. Wachovia shall incur no liability by reason of its recording or not recording such conversations, or preserving or destroying such recordings. The authority granted by this provision will survive the termination of these Terms & Conditions or the closing of an Account.

## Termination

Correspondent or Wachovia may close the Account and terminate these Terms & Conditions, and modify or terminate any service at any time without advance notice. Correspondent will receive any finally collected and available balance in its Account within a reasonable period of time after it is closed. Wachovia may return unpaid any items presented on a closed Account. Obligations which by their nature would continue beyond the termination of these Terms & Conditions shall survive the termination of these Terms & Conditions and closing of the Account.

## Applicable Laws

These Terms & Conditions shall be governed by and construed in accordance with the laws and regulations of the United States and the State of New York, including (without limitation) Articles 3, 4, 4A and 5 of the Uniform Commercial Code and New York CLS Dr & Cr § 151, which are all incorporated herein by reference and made a part hereof. Accounts which are inactive for a specified period of time may be subject to escheat under state law. Accounts are subject to

attachment, levy, seizure and garnishment law. Correspondent hereby irrevocably submits to the jurisdiction of the courts of the Borough of Manhattan, New York City, in the State of New York or the federal courts located therein over any action or proceeding arising out of or relating to these Terms & Conditions and irrevocably agrees that all claims in respect of such action or proceeding may be heard or determined in such courts. No legal proceeding may be commenced against Wachovia hereunder unless Correspondent has given Wachovia timely notice and such legal proceeding is commenced within two years after the closing date of the statement covering the period in which the claim arose.

Accounts are also governed by applicable U.S. Federal Reserve Bank rules and its Operating Circulars, the rules of clearing houses and similar associations to which Wachovia may belong, funds transfer system rules, publications of organizations such as (without limitation) the International Financial Services Association, and the International Chamber of Commerce and general commercial bank practices applicable to the services provided in connection with the Account.

## Compliance with Law

Wachovia is a bank organized and existing under the laws of the United States. It intends to comply with all laws and regulations of the United States applicable to it in any of its locations, including without limitation the USA PATRIOT Act, the Trading with the Enemies Act, the International Emergency Powers Act, regulations of the United States Department of the Treasury and the Office of Foreign Assets Control and in its foreign locations to comply with all applicable laws of the host country. Correspondent acknowledges that Wachovia's compliance with laws to which it is subject may affect the types of transactions Correspondent may conduct with or through Wachovia and may require that Correspondent provide or certify information to Wachovia.

**USA PATRIOT Act Notice:** To help the U.S. government fight the funding of terrorism and money laundering activities, U.S. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

## Waiver of Jury Trial

Correspondent and Wachovia each knowingly, voluntarily and intentionally waive any right that they may have to a trial by jury in any litigation in any way based upon, arising out of or related to these Terms & Conditions or the services provided hereunder or under any service description, or any course of conduct or course of dealing by the parties. This provision is a material inducement to Wachovia to provide the Account and the services referred to herein.

9.

## Invalidity of Contract Provisions

In the event any one or more of the provisions of these Terms & Conditions shall for any reason, including under any applicable statute or rule of law, be held to be invalid, illegal or unenforceable, the remaining provisions of these Terms & Conditions shall remain in full force and effect.

## Indemnification

Correspondent agrees to indemnify and hold Wachovia, its successors, assigns, correspondents, directors, officers, employees and agents harmless from and against any and all claims, losses, damages, liabilities and expenses of any nature, including legal expenses and attorneys fees: (1) suffered or incurred by Wachovia by reason of or pursuant to these Terms & Conditions, or the performance of services hereunder, (2) arising from any claim attributable to any act or omission taken by Wachovia based upon reliance on any individual indicated to be authorized to act on behalf of Correspondent in any document (or otherwise authorized by Correspondent) provided by Correspondent to Wachovia and (3) arising from any claim or demand based in whole or in part on an action or omission of Wachovia resulting from a request, direction or instruction from Correspondent. This indemnity will not be effective to relieve and indemnify Wachovia from and against its own gross negligence or willful misconduct. If Correspondent fails to pay any amount when due pursuant to any extension of credit granted in connection with Wachovia's delivery of any of the services described in these Terms & Conditions, unless the parties otherwise agree in writing, Correspondent shall pay interest on any overdue amount before and after judgment at a rate to be determined by Wachovia at its sole discretion.

## Liability

Wachovia's liability, if any, shall be limited to those actual damages which are the direct result of Wachovia's willful misconduct or gross negligence, which shall be determined in accordance with the commercial standards of the U.S. banking industry and applicable laws, rules and regulations. Wachovia is not responsible for any claim arising from non-payment of any item or for loss or delay in any clearing system unless it occurs as a result of willful misconduct or gross negligence by Wachovia or its employees. Damages with respect to electronic funds transfers will be limited to an amount equal to interest on the funds for each day the error or delay remains uncorrected at the applicable Federal Funds rate, i.e., the average of the Federal Funds rates published by the Federal Reserve Bank of New York for each of the calendar days for which interest is payable divided by 360, reduced by a percentage equal to Wachovia's reserve requirement on the Account. Wachovia may at its sole discretion

substitute in lieu of interest an "as of" adjustment method of compensation, i.e., recompute Correspondent's balances for account analysis purposes as if the error or delay had not occurred. If Wachovia is unable to recover all or any part of funds it erroneously transferred from a transferee who has no claim to them, Wachovia's liability will not exceed the amount of funds which Wachovia is unable to recover plus interest as aforesaid. Wachovia shall be subrogated to all rights of Correspondent against third parties and to any rights of a transferee against Correspondent in connection with any claim. In no event shall Wachovia be liable regardless of whether any claim is based on contract or tort, for any consequential, special or indirect losses or damages Correspondent may incur or suffer arising from or in connection with these Terms & Conditions, whether or not the likelihood or possibility of such losses or damages was known to Wachovia in advance.

Wachovia shall not be responsible for any loss or damage resulting from Acts of God, war, riots, terrorism, strikes, civil or industrial disturbance, malfunctions of equipment or other cause beyond Wachovia's control.

## Waiver

Wachovia may waive any of these Terms & Conditions but any such waiver shall apply only to the term or condition waived and only to that occasion and shall not constitute a waiver of any other term or condition.

## Legal Process

Correspondent irrevocably consents to the service of process by personal delivery or overnight courier or registered or certified airmail, postage prepaid, of copies of the summons and complaint or other process (which need be in the English language) to its office shown on its most recent account statement or to its agent for service of process in the United States. Nothing herein affects the right to serve process in any other manner permitted by law.

## Correspondent's Representations, Warranties and Covenants

Correspondent represents and warrants to Wachovia that: (1) All information, including financial information, whenever provided by Correspondent to Wachovia, shall be true, correct and complete. Information relating to Correspondent's financial condition accurately reflects Correspondent's financial condition as of the date(s) thereof; (2) Correspondent is not insolvent within the meaning of 11 USC Section 101 (32); (3) Correspondent is in compliance with all federal, state and local laws, including, all laws of the United States and any state thereof applicable to Correspondent's properties, operations,

business and finances; (4) Correspondent is duly organized and in good standing under the laws of the jurisdiction of Correspondent's organization, and Correspondent has all powers, licenses, authorizations and approvals to operate Correspondent's business as now conducted;

(5) Correspondent will promptly notify Wachovia of the existence of any condition or event which may constitute a breach of or default under these Terms & Conditions; (6) Correspondent will promptly notify Wachovia in writing of (a) any change in Correspondent's financial condition or business; (b) any change in Correspondent's name, address or business structure, ownership or organization; and (c) any material litigation or regulatory action affecting Correspondent; (7) Upon Wachovia's request therefore, Correspondent will promptly deliver to Wachovia true and correct copies of Correspondent's annual report and such other information regarding Correspondent's business affairs and operations including, but not limited to, income statements, balance sheets and statements of cash flows.

## Entire Terms & Conditions

These Terms & Conditions and the documents to which it refers constitute Correspondent's and Wachovia's entire agreement and understanding and supersede all prior terms and conditions. These Terms & Conditions may not be changed orally.

## Use of Correspondent's Account

Correspondent's use of its Account with Wachovia shall constitute Correspondent's agreement to be bound by these Terms & Conditions.

# US Legal Holidays

January 1
New Year's Day
**January (Third Monday)**
Martin Luther King Day
**February (Third Monday)**
President's Day
**May (Last Monday)**
Memorial Day
July 4
Independence Day
**September (First Monday)**
Labor Day
**October (Second Monday)**
Columbus Day
**November 11**
Veteran's Day
**November (Fourth Thursday)**
Thanksgiving Day
**December 25**
Christmas Day

Business day means a calendar day other than a Saturday or a Sunday, or the dates identified as U.S. Legal Holidays above or any other day on which a U.S. National Bank is authorized or directed to close. If January 1, July 4, November 11 or December 25 falls on a Sunday, the next Monday is not a business day. If January 1 or December 25 falls on a Saturday, the preceding Friday is not a business day.

```
ERROR: syntaxerror
OFFENDING COMMAND: --nostringval--
```

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| WACHOVIA BANK,<br>NATIONAL ASSOCIATION,<br><br>      Plaintiff,<br><br>      v.<br><br>MAJAPARA CASA DE CAMBIO S.A. de C.V.,<br>a Mexican corporation,<br><br>      Defendant,<br><br>HARRIS BANK, N.A., an Illinois corporation,<br><br>      Garnishee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No.  07 L 13958 |

## ORDER

**IT IS HEREBY ORDERED** that **It's Your Serve, 134 N. LaSalle Street, Suite 750, Chicago, IL 60606, License #117-000-885** with all process servers over the age of 18 and not party to this matter, is hereby appointed to make service of all process and orders in this cause.

Dated: December 14, 2007

**ENTER:** _____
                               **Judge**

ENTERED
JUDGE ALEXANDER P. WHITE - 0241
DEC 14 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000
Firm I.D. # 43456

Order Attachment Returnable    (This form replaces CCMI 24, CCMD 24 and CCL 27)                (Rev. 1/2/01) CCG 0024

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Wachovia Bank, National Association
                                                    Plaintiff          No. 07 L 13958

vs.

Majapara Casa De Cambio S.A. de C.V.
                                                    Defendant          Amount Claimed $ 24,711,845.00

Harris N.A.
                                                    Garnishee*         Return Date January 11, 2008
                                                                       (December 18, 2007 as to
                                                                       Garnishee Harris N.A.'s
ORDER FOR ATTACHMENT AND SUMMONS                                       interrogatory answers)

The Plaintiff Wachovia Bank, National Association                                       having established by ~~complaint and~~
affidavit a prima facie case that the Defendant Majapara Casa De Cambio S.A. de C.V.
is justly indebted to the Plaintiff Wachovia Bank, National Association                          in the amount of
24,711,845              Dollars xxx              and Cents and that Defendant (1) is not a resident
of this State and (2) either (a) within the two years preceding the filing of Plaintiff's affidavit has fraudulently
concealed or disposed of its property so as to hinder or delay its creditors, or (continued on page 2)
                        (Here State the Grounds of Attachment Relied Upon in the Affidavit)
and the Plaintiff having given bond and security, according to law:  IT IS ORDERED that the Sheriff of Cook County attach so
much of the estate, real or personal of the defendant as may be found in your county, as shall be of value sufficient to satisfy the
debt and costs, according to the affidavit, but in case any specific property of the defendant found in your county shall be described
herein, then you shall attach the described property only, and no other property, the said specified property to be so attached,
being described as follows:
Any and all bank accounts or other property of any kind upon which Majapara Casa de Cambio S.A. de C.V. has an
interest that is held at, maintained by, or in the custody or possession of Harris N.A. (d/b/a/ Harris Bank), including
but not limited to Account Number 2004919, up to a total aggregate amount of $12.5 million (US$)
and such estate attached in your possession to secure, or to provide that the same may be liable to further proceedings according to
law; and that you summon the defendant to either appear in person or through his/her attorney and cause an appearance and answer
to be filed in said cause in Room 801            , Richard J. Daley Center, Chicago                              , Illinois
                                                        (Location)
on or before January 11                , 2008     or at his/her option, to appear at any time prior thereto and move the
court to set a hearing on this Order for Attachment or affidavit, and that you also summon  Harris N.A.
                                   as garnishees*, requiring them to file with the clerk of the court at Room  801           ,
Richard J. Daley Center, Chicago, Ilinois
                                                        (Location)                                          at 9:30 A.M.
on December 18            , 2007     , or before that time their answers in writing to the interrogatories, submitted.
Atty. No.: 43456                                          (continued on page 2)
Name: Barry Rosen, Reed Smith LLP            ENTER: _____,
Atty. for: Plaintiff
Address: 10 S. Wacker Dr., Suite 4000        _____    _____
City/State/Zip: Chicago, IL  60606-7507          Judge                   Judge's No.
Telephone: 312-207-1000
                                                                 735 ILCS 5/4-110.

*Strike out portions not applicable.

### NOTICE TO SHERIFF

Service upon the defendant shall be made as soon as possible after entry of this Order for Attachment upon the property described
herein, but in no event later than five days thereafter.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| WACHOVIA BANK,<br>NATIONAL ASSOCIATION, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )    Case No. 07 L 13958<br>) |
| MAJAPARA CASA DE CAMBIO S.A. de C.V., | )<br>) |
| Defendant, | )<br>) |
| HARRIS N.A., | )<br>) |
| Garnishee. | )<br>) |

**ORDER FOR ATTACHMENT AND SUMMONS (con't)**

(b) is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors.

Harris N.A. shall serve counsel for Plaintiff with its interrogatory answer by hand delivery on or before December 18, 2007.

Service of this Order for Attachment and Summons along with the supporting papers via overnight mail and registered mail upon Majapara Casa De Cambio S.A. de C.V. at its office located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, to be deposited to the overnight carrier and in the mail on or before December 17, 2007, shall be deemed good and sufficient service thereof.



I hereby certify that the document to which this certification is affixed is a true copy.

Date

**DEC 26 2007**

Dorothy Brown
Clerk of the Circuit Court
of Cook County, IL

## NOTICE TO GARNISHEE

Answers to the following interrogatories must be delivered to the Clerk of the Court at or before the date and time fixed in the Order for Attachment. They may be sent by registered mail directed to Room 801, Richard J. Daley Center, Chicago, Illinois 60602, provided delivery is made in due time. Failure to answer may result in entry of a conditional judgment against the garnishee defendant for the amount claimed by the plaintiff.

## INTERROGATORIES TO GARNISHEE

1.    When you were served with an Order for Attachment, was there any indebtedness due or to become due from you to the defendant, except for wages? If your answer is yes, state fully the nature, amount and due date of such indebtedness.

2.    When you were served with an Order for Attachment, was there any other property in your possession, custody or control (a) belonging to the defendant or (b) in which the defendant has an interest? If your answer is yes, describe the property, including the amount of money in any bank accounts.

_____ having been duly sworn deposes and says that the undersigned

is the _____ of Garnishee, that the undersigned has knowledge of the

facts pertaining to the answers to the foregoing interrogatories. Under penalties as provided by

law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/1-109, the

undersigned certifies that the statements set forth in the foregoing Interrogatory Responses are

true and correct, except as to matters therein stated to be on information and belief, and as to

such matters, the undersigned certifies as aforesaid that the undersigned believes the same to be

true.

Executed this __<sup>th</sup> day of December 2007 in _____, _____.

_____

_____

Subscribed and sworn before me
This _____ day of _____, 2007.

_____

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| **WACHOVIA BANK, N.A.,**<br><br>          **Plaintiff,**<br><br>v.<br><br>**MAJAPARA CASA DE CAMBIO S.A. de C.V.**        **Defendant.**<br><br>**Harris, N.A., a National Association**<br><br>          **Garnishee.** | **BOND NUMBER: 8195-90-12**<br><br><br>**Case No. 07 L 13958**<br><br><br>**BOND FOR PREJUDGMENT ATTACHMENT** |

On December 14, 2007, plaintiff applied for an Order for Attachment against the estate of the Defendant, **MAJAPARA CASA DE CAMBIO S.A. de C.V.**

We jointly and severally bind ourselves to the People of the State of Illinois, for the use of any person interested in the property attached, that plaintiff will prosecute his suit with effect, or in case of failure to do so he will satisfy all costs awarded to anyone interested in the property attached and all damages and costs which shall be recovered against him for wrongfully obtaining the Order for Attachment.

The obligation of this bond is limited to TWENTY FIVE MILLION DOLLARS ($25,000,000.00).

IRS Ch. 110 Sec. 4 – 109 (1981)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Meltzer

**WACHOVIA BANK, N.A.**

BY: _____

As Principal, Joseph E. Hunnicutt
Senior Vice President

**FEDERAL INSUARNCE
COMPANY**

BY: _____
Attorney-In-Fact, Karen Griffie

Dated December 14, 2007

Approved _____
            Judge            Judge's No.

Name            Barry s .Rosen
Attorney for    Wachovia Bank, N.A.
Address         10 South Wacker Drive,
                Chicago, Illinois 60606
Telephone       (312) 207-6483
Atty No.        2380595

CLT 815054v3

Meltzer



| | | | |
|---|---|---|---|
| **Chubb**<br>**Surety** | **POWER**<br>**OF**<br>**ATTORNEY** | **Federal Insurance Company**<br>**Vigilant Insurance Company**<br>**Pacific Indemnity Company** | **Attn: Surety Department**<br>**15 Mountain View Road**<br>**Warren, NJ 07059** |

**CHUBB**

Know All by These Presents, That **FEDERAL INSURANCE COMPANY**, an Indiana corporation, **VIGILANT INSURANCE COMPANY**, a New York corporation, and **PACIFIC INDEMNITY COMPANY**, a Wisconsin corporation, do each hereby constitute and appoint **Joe E. Hunnicutt, Ann D. Woodruff and Karen Griffie of Charlotte, North Carolina**————

each as their true and lawful Attorney- in- Fact to execute under such designation in their names and to affix their corporate seals to and deliver for and on their behalf as surety thereon or otherwise, bonds and undertakings and other writings obligatory in the nature thereof (other than bail bonds) given or executed in the course of business, and any instruments amending or altering the same, and consents to the modification or alteration of any instrument referred to in said bonds or obligations.

In Witness Whereof, said **FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY** have each executed and attested these presents and affixed their corporate seals on this **27th** day of **October, 2005**

Kenneth C. Wendel, Assistant Secretary

John P. Smith, Vice President

**STATE OF NEW JERSEY**
**County of Somerset**          ss.

On this **27th** day of **October, 2005** before me, a Notary Public of New Jersey, personally came Kenneth C. Wendel, to me known to be Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY, the companies which executed the foregoing Power of Attorney, and the said Kenneth C. Wendel, being by me duly sworn, did depose and say that he is Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY and knows the corporate seals thereof, that the seals affixed to the foregoing Power of Attorney are such corporate seals and were thereto affixed by authority of the By- Laws of said Companies; and that he signed said Power of Attorney as Assistant Secretary of said Companies by like authority; and that he is acquainted with John P. Smith, and knows him to be Vice President of said Companies; and that the signature of John P. Smith, subscribed to said Power of Attorney is in the genuine handwriting of John P. Smith, and was thereto subscribed by authority of said By- Laws and in deponent's presence.

Notarial Seal



**KAREN A. EDER**
Notary Public, State of New Jersey
No. 2231647
Commission Expires Oct. 28, 2009

Karen Eder
                                                                    Notary Public

## CERTIFICATION

Extract from the By- Laws of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY:

"All powers of attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman or the President or a Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the following officers: Chairman, President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Assistant Secretaries or Attorneys- in- Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached."

I, Kenneth C. Wendel, Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY

(the "Companies") do hereby certify that

   (i)   the foregoing extract of the By- Laws of the Companies is true and correct,

   (ii)  the Companies are duly licensed and authorized to transact surety business in all 50 of the United States of America and the District of Columbia and are authorized by the U.S. Treasury Department; further, Federal and Vigilant are licensed in Puerto Rico and the U.S. Virgin Islands, and Federal is licensed in American Samoa, Guam, and each of the Provinces of Canada except Prince Edward Island; and

   (iii) the foregoing Power of Attorney is true, correct and in full force and effect.

Given under my hand and seals of said Companies at Warren, NJ this

  

Kenneth C. Wendel, Assistant Secretary

IN THE EVENT YOU WISH TO NOTIFY US OF A CLAIM, VERIFY THE AUTHENTICITY OF THIS BOND OR NOTIFY US OF ANY OTHER MATTER, PLEASE CONTACT US AT ADDRESS LISTED ABOVE, OR BY  Telephone (908) 903- 3493  Fax (908) 903- 3656
e-mail: surety@chubb.com

Bond Executed on December 14, 2007

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 2007L13958 |
| v. | ) | The Honorable Alexander White, |
| | ) | Presiding Judge |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. de C.V., | ) | |
| a.k.a. Majapara Casa de Cambio S.A. de C.V., | ) | |
| and JOM CORPORATION OF ILLINOIS | ) | |
| | ) | |
| *Defendant,* | ) | |
| | ) | |
| Harris N.A., a National Association, | ) | |
| | ) | |
| *Garnishee.* | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF EX PARTE TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT JOM CORPORATION OF ILLINOIS AND EXPEDITED DISCOVERY

Plaintiff, Wachovia Bank, National Association ("Wachovia") hereby moves for two forms of relief on an emergency basis:

*First,* pursuant to 735 ILCS 5/11-101 of the Code of Civil Procedure, on an emergency, ex parte basis, for the entry of a temporary restraining order against defendant JOM Corporation of Illinois ("JOM"). Wachovia seeks the entry of such emergency injunctive relief on an ex parte basis for the purpose of maintaining the status quo in these proceedings and enjoining the transfer by JOM of any monies, property, accounts or assets of any kind or nature in the possession, custody or control of JOM for a short period of time, and thereby preventing any further irreparable harm to Wachovia as a result of JOM possibly draining or

dissipating additional monies otherwise owed to Wachovia by co-defendant Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa de Cambio S.A. de C.V. ("Majapara"). On information and belief, JOM is an alter ego of Majapara, and conducting business activities in the State of Illinois. Wachovia fears that if advance notice of this emergency relief is given to JOM, there is a potential likelihood that JOM, as an alleged alter ego of Majapara, may transfer away its assets, thereby unduly and irreparably frustrating Wachovia's ability to collect and satisfy its $25 million claims against Majapara.

*Second,* for good cause shown pursuant to Supreme Court Rule 201(d), to permit Wachovia to commence the taking of certain, limited expedited discovery so as to further discover the relationship between JOM and Majapara in connection with Wachovia's claim that JOM is Majapara's alter ego.

## PERTINENT FACTUAL BACKGROUND

1.    This action arises from Majapara's misappropriation of over $38 million (US$) of Wachovia's monies relating to a series of foreign exchange transactions between the parties earlier in December 2007.

2.    The facts detailing the relationship between Wachovia and Majapara leading up to the filing and entry of an Order of Attachment against Majapara and garnishee Harris N.A. ("Harris Bank") in the amount of $25 million on December 14, 2007, and, as amended on December 17, 2007, have already been set forth in Wachovia's concurrently filed Complaint and supporting Affidavit, together with its previously filed Affidavit in Support of Order of

CHILIB-2127442.1-MDRichma-999906-00840 12/17/07 10:29 AM

Attachment of Carlos Perez (and supplement thereto), and Emergency Motion For Issuance of Order of Attachment.

3.      On December 14, 2007, this Court entered an emergency Order of Attachment against Majapara and garnishee, Harris Bank, in the amount of $12.5 million (US$). That Attachment Order has been or will immediately be modified (as requested in a concurrently filed motion of Wachovia) so as to reflect a difference in Majapara's corporate name and to ensure that the Attachment Order embraces the corrected name for purposes of preserving Wachovia's ability to collect, from all Majapara assets and property, its $25 million claims against it.

4. Wachovia has learned additional facts that might adversely impact its ability to collect on its $25 million claim against Majapara.

5. On information and belief, JOM is or was an Illinois corporation, which had its principal place of business in Chicago, Illinois. The Illinois Secretary of State's public records reflect JOM having been voluntarily dissolved on or about December 29, 2006. On information and belief, "JOM" is an acronym for "Jorge Ortiz Munoz," Majapara's Chairman and Chief Executive Officer. Upon further information and belief, JOM and Majapara have common officers and/or directors with one another.

6.      According to the Illinois Secretary of State records, JOM has used the Assumed Name of "Majapara-Chicago."

7.      While JOM ostensibly was dissolved voluntarily nearly a year ago in December 2006, on further information and belief, JOM nonetheless continued to conduct business

- 3 -

activities in Illinois and elsewhere. For example, to Wachovia's knowledge, recently, in October and November 2007, JOM (despite having supposedly dissolved) transferred approximately $5,615,666.00 in monies and assets from its Harris Bank account (entitled, on information and belief "JOM Corp of Illinois DBA Majapara-Chicago"), direct to co-defendant Majapara.

8.    Given the apparent closeness in ties between Majapara and JOM, as its potential alter ego, coupled with the disturbingly learned alleged facts that, just recently, JOM had been transferring millions of dollars from its Harris Bank accounts directly to Majapara, Wachovia filed its Complaint naming not only the original party to the December 14, 2007 Order of Attachment (Majapara), but including JOM, as well. Specifically, in Count VI of the Complaint, Wachovia has alleged that the potential unity of ownership and interest between JOM and Majapara warrants that their purported separate corporate existence should be ignored, especially given the potential for Majapara using JOM's bank account(s) at Harris Bank, and perhaps other banking facilities, as a sanctuary to frustrate and hinder Majapara's creditors.    It is the confluence of all these alleged suspicious factual circumstances that, Wachovia submits, should warrant this Court to act on an urgent basis to prevent JOM, as Majapara's alleged alter ego, from taking any further steps to deplete assets and property of Majapara while Wachovia's $25 million claims are litigated. The status quo as it presently exists, should remain intact.

CHILIB-2127442.1-MDRichma-999906-00840 12/17/07 10:29 AM

**THIS COURT SHOULD GRANT WACHOVIA'S EMERGENCY TRO AGAINST JOM TO MAINTAIN THE STATUS QUO AND PREVENT THE POTENTIAL FOR IRREPARABLE HARM BY THE DISSIPATION OF ASSETS**

*The Issue of Maintaining the Status Quo By Entry Of A TRO Against JOM*

5.      As this Court knows, a temporary restraining order is designed to allow the trial court to preserve the status quo pending a further hearing to determine whether a preliminary injunction should issue. *See, e.g., Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.,* 94 Ill. 2d 535, 447 N.E.2d 289 (1983). The "status quo" is typically defined as the "last, actual, peaceable uncontested status that preceded the pending controversy;" *Powell v. Home Run Inn, Inc.,* 202 Ill. App. 3d 94, 559 N.E.2d 803, 807 (1st Dist. 1990); or, "the last, peaceable uncontested status which preceded the litigation." *Instrumentalist Co. v. Band, Inc.,* 134 Ill. App. 3d 884, 480 N.E.2d 1272, 1278 (1st Dist. 1985). Wachovia seeks to invoke the powers of a TRO to do just that: maintain the status quo among the parties until the issue of JOM's alleged alter ego status with Majapara can be sorted out through the requested expedited discovery, and Wachovia's irreparable harm in seeing the assets of Majapara being further dissipated, stopped cold.

*The Issue of Whether Advance Notice Of TRO Should Be Given To JOM: The Existence Of Irreparable Harm And Lack Of Adequate Remedy At Law*

6.      While notice should typically be given to the opponent prior to entry of a TRO, exceptions exist. This case warrants application of such exceptions. Where such advance notice may result in the opposing party taking measures to destroy the substance of the litigation or otherwise obstruct a court from dealing effectively with the issues, the injunction

CHILIB-2127442.1-MDRichma-999906-00840 12/17/07 10:29 AM

may be entered without notice. *See, e.g., Hirschauer v. Chicago Sun-Times,* 192 Ill. App. 3d 193, 548 N.E.2d 630, 635-636 (1st Dist. 19989); *Board of Trustee of Community College District 508 v. Cook County College Teachers Union,* 42 Ill. App. 3d 1056, 356 N.E.2d 1089 (1st Dist. 1976) (notice to be given of application for TRO except in circumstances where delay would irreparably damage the applicant). The test in determining whether advance notice need or should be given prior to entry of a TRO has been stated as whether providing such notice would "obstruct seriously the court from dealing justly and effectively with the issues in dispute." *Bashwiner v. Bashwiner,* 126 Ill. App. 3d 365, 466 N.E.2d 1161, 1163 (1st Dist,. 1984).

7.    Here, Wachovia has satisfied, *prima facie,* why notice should not be given to JOM at this procedural juncture. Wachovia has grave concern that, if advance notice is given to JOM of the proposed TRO freezing its transfer of any assets or accounts, there is the potential for the monies or assets in that or those accounts to immediately be drained or otherwise dissipated—perhaps to Mexico, where Majapara is principally located—thereby potentially frustrating, irreparably, Wachovia's collection efforts against Majapara (of which JOM is an allege alter ego) for the $25 million that it owes Wachovia. Indeed, once such funds or property are transferred outside this Court's jurisdiction, Wachovia would likely have no adequate remedy at law to seek their recovery in a foreign country. Irreparable harm may be shown when a defendant's solvency is brought into play. Illinois Civil Practice Volume II, section 4.18 ("When a judgment for money damages would be worthless because of the financial condition of the defendant, the remedy may be inadequate.") Indeed, Majapara's alleged conduct in the underlying action is telling: without notice to Wachovia and in direct violation of the parties' agreements, Majapara unilaterally transferred millions of Wachovia's

- 6 -

dollars to third parties just a few days ago. Permitting that circumstance to repeat itself through Majapara's alleged alter ego, JOM, would be patently unfair to Wachovia. Thus, providing advance notice might obstruct the Court from dealing effectively with the central issues presented: Wachovia's entitlement to payment from Majapara of the $25 million it purposefully misappropriated from Wachovia on December 7, 2007. Balanced against the lack of notice is that, once the TRO is entered, its duration will be short pending a further hearing with notice at that time then given to JOM (at which point the injunction may be extended by further court order for "good cause shown" under §11-101 of the Injunction Act). Thus, here it more than "advisable that the positions of the parties remain the same until the merits of the case are considered." *Armour & Co. v. United American Food Processors Inc.*, 37 Ill. App. 3d 132, 345 N.E.2d 795, 799 (1st Dist. 1976).

### *Wachovia's Protectable Interest And Likelihood Of Success On Its Claims*

8.    Injunctive relief is further warranted because Wachovia has shown a protectable interest and a likelihood of success on the merits regarding its claims against Majapara, and thereby derivatively, against JOM, as its alleged alter ego. Satisfying the likelihood of success on the merits component merely requires that the movant raise a "fair question" as to entitlement to its requested relief. *See Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 447 N.E.2d 288 (1983) (TRO should not be refused merely because the court may not be absolutely certain that the plaintiff as the right he claims but that the court should require plaintiff merely raise a "fair question" about the existence of his claim right); *People's Gas Light & Coke Co. v. Chicago*, 117 Ill. App. 3d 353, 453 N.E.2d 740 (1st Dist. 1983) (affirming entry of TRO noting that plaintiff need only make a summary showing of

- 7 -

fact based discovery would, in turn, impact the continued need for maintaining injunctive relief in place against JOM transferring its property or assets at the preliminary injunction stage or further.

WHEREFORE, Plaintiff Wachovia Bank, National Association, prays that this Court GRANT its Emergency Ex Parte Temporary Restraining Order And Expedited Discovery consistent with the attached draft order.

Dated:  December 17, 2007

Respectfully submitted,
*WACHOVIA BANK, N.A.*
Plaintiff,

By: _____
One of Its Attorneys

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH
10 S. Wacker Drive
Chicago, IL 60606

Attorneys for Plaintiff

- 9 -