08 C 170

# EXHIBIT A

JUDGE ST. EVE
MAGISTRATE JUDGE COLE

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2007L13958 |
| v. | ) | |
| | ) | |
| CASA DE CAMBIO MAJAPARA S.A. de C.V., | ) | |
| a.k.a. Majapara Casa de Cambio S.A. de C.V., | ) | |
| and JOM CORPORATION OF ILLINOIS | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| Harris N.A., a National Association, | ) | |
| | ) | |
| Garnishee. | ) | |

### COMPLAINT

Plaintiff Wachovia Bank, N.A. ("Wachovia") brings this action against Defendants Casa de Cambio Majapara S.A. de C.V. a.k.a. Majapara Casa De Cambio S.A. de C.V. ("Majapara") and JOM Corporation of Illinois ("JOM"). As grounds therefore, Plaintiff states as follows:

### PRELIMINARY STATEMENT

1.    This action arises from Majapara's misappropriation of over $38 million (US$) of Wachovia's money relating to a series of foreign exchange spot transactions between the parties. Foreign exchange spot transactions, due to their frequency, the speed at which the transactions are agreed and closed, and the manner in which funds are simultaneously exchanged, are founded upon trust. Majapara, however, abused that trust -- a trust that was established through years of currency trading with Wachovia -- to plunder more than $38 Million from Wachovia.

2.    Majapara's action was not a mere renege on a multi-million dollar transaction wherein Majapara returned Wachovia's property when it realized it could not complete the foreign currency exchange. Subsequent conversations with Majapara make it apparent that

Majapara never intended to honor its commitments but, instead, had decided to wrongfully keep Wachovia's money and abscond with it. In these after-the-fact conversations, Majapara admitted to Wachovia that, at the time it accepted Wachovia's funds, Majapara was illiquid, that it had engaged in illicit activities in relation to its foreign exchange transactions, and threatened that, if Wachovia took any steps to enforce its rights, Wachovia's judgment would be uncollectible. Through this action for breach of contract, promissory estoppel, unjust enrichment, fraud, and alter ego liability, Wachovia seeks a judgment against Majapara and JOM Corporation of Illinois (as alter ego of Majapara) for $24,711,845 (the amount of Wachovia's loss less offsets currently obtained), plus prejudgment interest and costs.

## PARTIES AND JURISDICTION

3.      Plaintiff Wachovia is a national banking association with its principal place of business in Charlotte, North Carolina. Wachovia has offices in Illinois.

4.      Upon information and belief, Defendant Majapara is a Mexican corporation with its principal place of business in Mexico City, Mexico. Upon information and belief, Defendant Majapara utilizes a bank account at a Chicago branch of Harris N.A. to transact business and it transacts business in Illinois on a continuous and systematic basis. Further, upon information and belief, Defendant Majapara transacts business on a continuous and systematic basis through an alter ego, Defendant JOM Corporation of Illinois ("JOM"), which is or was an Illinois corporation with its principal place of business at 3506 W. 26th Street in Chicago, Illinois.

5.      Upon information and belief, JOM voluntarily dissolved on or about December 29, 2006, but still transacts business. Upon information and belief, JOM transacts business as Majapara.

6.      Upon information and belief, Garnishee Harris N.A. ("Harris Bank") is an Illinois

– 2 –

national banking association with its principal place of business in Chicago, Illinois.

7.    Jurisdiction is appropriate in this case pursuant to 735 ILCS 5/2-209.

8.    Venue is appropriate in this case pursuant to 735 ILCS 5/2-101 because Defendant JOM is an Illinois corporation who, upon information and belief, has or had its principal place of business in Cook County and part of the transactions herein arose in Cook County.

## FACTS COMMON TO ALL COUNTS

### The Majapara Relationship With Wachovia

9.    Starting in or about 1998, Majapara and First Union National Bank ("First Union"), a predecessor to Wachovia, agreed to enter into foreign exchange transactions together. In these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate.

10.    In order to facilitate Majapara and First Union entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement (the "FX Subscription Agreement"), a copy of which is attached hereto as Exhibit A. Pursuant to the FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions with First Union electronically through First Union's foreign exchange website. This, however, was not the exclusive method for the parties to enter into foreign exchange spot transactions.

11.    Effective April 1, 2002, Wachovia merged into and under the charter of First Union with the resulting title of Wachovia Bank, National Association. As a result of the merger, First Union changed its name to Wachovia Bank, National Association. As a result of the merger, the FX Subscription Agreement was assigned to Plaintiff Wachovia.

**The Foreign Exchange Transactions At Issue**

12.   On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven (7) transactions, all of which were to settle on December 7, 2007, whereby Wachovia would deliver an aggregate of 26 million Euros to Majapara and Majapara would deliver an aggregate of $38,132,700 to Wachovia. These transactions required Majapara to transfer dollars directly to Wachovia at a Wachovia-owned New York account. Six (6) of the transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed over the telephone. Copies of the confirmations for these transactions are attached hereto as Exhibit B.

13.   Pursuant to these seven (7) foreign exchange agreements, on December 7, 2007, Wachovia sent 26 million Euros to Majapara. Majapara failed to deliver the agreed upon $38,132,700.00 to Wachovia, as required, on December 7, 2007.

14.   On or about December 13, 2007, the General Director of Majapara admitted that Majapara is obligated to provide the agreed upon currency to Wachovia.

15.   Despite its failure to pay Wachovia for the over $38 million worth of Euros that Wachovia sent to Majapara, Majapara tried to place additional trades with Wachovia on December 7, 2007, knowing that it could not cover such additional trades or its existing obligation to deliver the dollars. Wachovia was able to stop such additional trades from being executed.

16.   Moreover, on December 11, 2007, after refusing to pay Wachovia over $38 million for the exchange, Majapara sought to drain an account held at Wachovia by attempting to transfer over $9 million out of that account.

17.   By opening an account at Wachovia, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which, under its terms, grants Wachovia setoff rights.  See Terms and Conditions, attached hereto as Exhibit C.  Through its setoff rights, Wachovia was able to secure $13,420,155, which came into Majapara's accounts at Wachovia, but has not been able to recover the remaining amount Wachovia is owed.  Some of the amount recovered represents conditional credit that may be subject to reduction by reason of return of items (in this case, checks) for which this credit was given (see next Paragraph).

18.   Majapara also maintains five (5) U.S. dollar accounts at Wachovia.  As to each of these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program.  Majapara is obligated to reimburse Wachovia for these amounts, but has now stated it is unable to and will not meet its financial obligations.  This liability has averaged $3.3 million per month for the last several months.

## JOM Is The Alter Ego Of Majapara

19.   JOM is or was an Illinois corporation which, upon information and belief, had its principal place of business in Chicago, Illinois.

20.   Illinois Secretary of State records show that JOM was voluntarily dissolved on or about December 29, 2006.  A copy of the Secretary of State records is attached hereto as Exhibit D.

21.   Upon information and belief, JOM and Majapara have common officers and/or directors.

22.   Upon information and belief, "JOM" stands for "Jorge Ortiz Munoz," who is Majapara's Chairman and CEO.

23.   Upon information and belief, JOM and Majapara have one or more common owners and/or JOM is a subsidiary of Majapara.

24.   According to the Illinois Secretary of State records, JOM used the Assumed Name of "Majapara-Chicago."

25.   Although JOM was dissolved approximately a year ago, upon information and belief, it is still engaging in business.

26.   In fact, in October and November 2007, JOM (a dissolved corporation according to Illinois Secretary of State records) transferred $5,615,666 from its Harris Bank account (entitled, upon information and belief, "JOM Corp of Illinois DBA Majapara-Chicago) directly to a Majapara account at Wachovia.

27.   Documentation reflecting one such recent transfer from JOM to Majapara is attached at Exhibit E.

28.   Upon information and belief, JOM is an alter ego of Majapara and JOM's assets, accordingly, can be utilized to satisfy Majapara's debts to Wachovia.

## COUNT I

### (Breach of Contract Against Majapara)

29.   Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

30.   As set forth above, Wachovia entered into a series of currency exchange agreements with Majapara.

31.   Majapara breached those agreements by failing to deliver the currency as agreed upon by the parties.

32.   Wachovia has fulfilled its obligations under the agreements.

33.  As a result of Majapara's breaches, Wachovia has suffered damage in the amount of not less than $24,711,845.00, plus interest, plus the amount of any contingent residual exposure as set forth in Paragraph 18 above.

## COUNT II

### (Promissory Estoppel Against Majapara – Alternate Count)

34.  Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

35.  In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange spot transactions at issue here, equity intervenes, creating the necessary consideration to support an agreement requiring Majapara to pay Wachovia not less than $24,711,845 in return for accepting currency from Wachovia.

36.  Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

37.  In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

38.  Wachovia has requested the funds from Majapara.

39.  To date Majapara has not provided the required currency to Wachovia.

40.  Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155 (subject to reduction for the reasons set forth in Paragraph 18 above).

41.  Wachovia has no adequate remedy at law.

42.  As a result, Majapara has been unjustly enriched to the detriment of Wachovia.

## COUNT III

### (Unjust Enrichment Against Majapara – Alternate Count)

43.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

44.    In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange transactions at issue here, equity would still require Majapara to pay Wachovia an amount not less than $24,711,845 in return for accepting currency from Wachovia.

45.    Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

46.    In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

47.    Majapara did not deliver any currency to Wachovia.

48.    Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155 (subject to reduction for the reasons set forth in Paragraph 18 above).

49.    Wachovia requested that Majapara deliver the currency it is owed.

50.    To date, Majapara has neither delivered the required currency to Wachovia, nor returned return the currency Wachovia sent to it.

51.    Majapara has unjustly retained this benefit to the detriment of Wachovia.

52.    Majapara's retention of this benefit violates fundamental principles of justice, equity and good conscience.

53.    Wachovia has no adequate remedy at law.

## COUNT IV

### (Fraud Against Majapara)

54.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

55.    As set forth above, on or about December 5, 2007, Majapara and Wachovia entered into a series of seven (7) currency exchange transactions.

56.    Pursuant to the parties' agreement, in exchange for the delivery of 26 million Euros from Wachovia, Majapara agreed to deliver $38,132,700 (US$) to Wachovia.

57.    Upon information and belief, at the time Majapara entered into the December 5, 2007 agreement and at the time it accepted Wachovia's funds, it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement.

58.    Notwithstanding its knowledge, Majapara represented to Wachovia that it would deliver $38,132,700.00 (US$) to Wachovia to settle the transactions.   Upon information and belief, at the time of the transactions, Majapara knew it would not deliver the required currency and was acting under a present intent to deceive Wachovia and abscond with its funds.   Its representations to Wachovia were false and materially misleading.   In forwarding the funds to Majapara, Wachovia had the right to rely on Majapara's representations.

59.    Majapara's fraudulent intent was confirmed in conversations Wachovia subsequently had with representatives of Majapara.

60.    For example, on or about December 13, 2007, Carlos A. Perez, a Managing Director of Wachovia, spoke with Jorge Ortiz Munoz, the Chairman and CEO of Majapara by telephone, and Mr. Ortiz acknowledged that Majapara, prior to settlement of the transactions, knew that it was experiencing "a liquidity crisis."  Mr. Ortiz stated that Majapara had received Wachovia's Euros and lent the money to third parties.  When Mr. Perez confronted Mr. Ortiz

- 9 -

concerning the transaction and the illegality of Majapara's actions since, as a Casa de Cambio, under Mexican law Majapara is not permitted to make loans, Mr. Ortiz responded, "I recognize that I have done something that is not permitted."

61.    Due to Majapara's "liquidity crisis" and other impermissible activities relating to its currency transactions, Majapara did not have sufficient funds to complete the exchange with Wachovia.    Majapara nonetheless accepted Wachovia's funds, knowing that it would be incapable of repaying the funds to Wachovia.

62.    Majapara then claimed to have used some or all of the Wachovia funds to engage in impermissible lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligation to transfer over $38 million to Wachovia.

63.    Wachovia entered into the transactions and delivered 26 million Euros to Majapara in reasonable reliance upon Majapara's representations that it was going to deliver the requisite currency.

64.    As a result of Majapara's fraud, Wachovia has been damaged in an amount to be determined at trial, but not less than $24,711,845.

### COUNT V

### (Breach of Contract/Anticipatory Repudiation Against Majapara)

65.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

66.    As set forth above, Majapara maintains five (5) US dollar accounts at Wachovia. Under these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program -- this contingent liability is a continuing concern. In this regard, Wachovia is entitled to immediate reimbursement from Majapara for the amounts Wachovia is required to pay out.

67.    Over the last several months, this liability has averaged $3.3 million per month.

68.    So far this month, Wachovia has already had to cover certain residual liabilities for which Majapara, in breach of its agreements with Wachovia, has not reimbursed Wachovia.  As a result, Majapara breached the parties' agreement and is indebted to Wachovia.

69.    Additionally, Majapara has already stated to Wachovia that it is illiquid and unable to satisfy its obligations owed to Wachovia.  Accordingly, Majapara has anticipatorily breached and/or repudiated its agreements with Wachovia by stating it will not be immediately reimbursing Wachovia for these obligations now or when they come due.

70.    Wachovia has performed all of its obligations under its agreements with Majapara.

71.    Consequently, Wachovia has been damaged by Majapara's breach of the parties' agreement and will continue to be damaged by Majapara's anticipatory breach of the parties' agreement in an amount to be determined at trial.

## COUNT VI

### (Alter Ego Liability Against JOM)

72.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 28.

73.    Upon information and belief, there is a such unity of interest and ownership between Majapara and JOM that the separate corporate personalities should no longer be recognized.

74.    Adherence to the fiction of separate corporate existence would sanction fraud or promote injustice upon creditors, such as Wachovia.

75.    Upon information and belief, JOM is the alter ego of Majapara.

76.    As the alter ego of Majapara, JOM is liable to Wachovia for Majapara's liability to Wachovia under this Complaint.

- 11 -

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Defendants Majapara and JOM and for an order as follows:

(i)    On the First, Second, Third, and Fourth Causes of Action, monetary damages in an amount to be determined at trial, but not less than $24,711,845.00, plus prejudgment interest;

(ii)    On the Fifth Cause of Action, monetary damages in an amount to be determined at trial, plus prejudgment interest;

(iii)    On the Sixth Cause of Action, monetary damages, plus prejudgment interest, against JOM under Counts One through Five to the same extent as Majapara as the alter ego of Majapara;

(iv)    Punitive damages in connection with the Fraud account against both defendants;

(v)    An award of costs, expenses and attorneys' fees attendant to this action; and

(vi)    Such other and further relief as this Court deems just and proper.

Dated: December 17, 2007

Respectfully submitted,
*WACHOVIA BANK, N.A.*
Plaintiff,

By: _____
One of Its Attorneys

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000
Firm I.D. # 43456
Attorneys for Plaintiff

A

*W. japara*

# FIRST UNION ONLINE FX SUBSCRIPTION AGREEMENT

This First Union Online FX Subscription Agreement ("*Agreement*") sets forth the terms and conditions on which the party identified on the signature page hereof as the Subscriber ("*Subscriber*") may execute foreign exchange transactions with First Union National Bank ("*FUNB*") over the Internet ("*Online Transactions*") through FUNB's foreign exchange website currently operating at http://www.firstunion.com/capitalmarkets/fx ("*FX Website*"). This Agreement is not intended to preclude the parties from entering into foreign exchange transactions with each other in any other manner. Subject to the terms and conditions of this Agreement, Subscriber and FUNB agree as follows:

## 1. Internet Access

In order for Subscriber to communicate with FUNB through the FX Website, Subscriber shall be responsible for (i) arranging its own access to the Internet through such providers of telephonic, wireless, and/or Internet access services as it deems necessary or desirable, and (ii) all costs and expenses associated with such services, including connection charges. FUNB shall not be responsible for any acts or omissions of any of such Subscriber's service providers in the course of transmitting, receiving, handling or storing communications between Subscriber and FUNB or otherwise.

## 2. FX Website Access

(a) In order for Subscriber to communicate with FUNB through the FX Website, one or more of Subscriber's officers or employees designated by Subscriber (each, a "*User*") will be issued a unique digital certificate ("*Digital Certificate*") to be stored on the web browser of a personal computer intended to be used by the User to carryout his/her functions for Subscriber, together with a User identification number ("*ID*") and a unique personal password ("*Password*"). Each Digital Certificate is unique to the User, and if a User wishes to use more than one computer or browser to access the FX Website, the User must request an additional Digital Certificate for each such computer or browser. FUNB reserves the right to limit the number of Digital Certificates issued to Subscriber and its Users. Subscriber agrees that, before any User is provided with any Digital Certificate, that User will have (i) requested from the First Union National Bank Certificate Authority ("FunbCA"), and completed the process necessary to receive, a Digital Certificate (including the use of "shared secrets" with FUNB and any other security measures which the FunbCA may require to validate the User's identity) and (ii) accepted the terms and conditions of the Digital Certificate Documents. "*Digital Certificate Documents*" means the First Union National Bank Certificate Authority Subscriber Agreement ("FunbCA Subscriber Agreement"), which is presented to and agreed to by User during the online Digital Certificate application process, and each document that the FunbCA Subscriber Agreement incorporates by reference. The Digital Certificate Documents will govern each Digital Certificate and its use and be binding upon the Subscriber and that User in his/her individual capacity, and for that purpose the term "Subscriber" in the FunbCA Subscriber Agreement shall be deemed to refer to each of the Subscriber and the User, respectively. This Agreement is the "Master Agreement" referred to in the FunbCA Subscriber Agreement. Nothing in this Agreement is intended to supersede, modify, limit, or restrict anything contained in the Digital Certificate Documents, and in the event of any inconsistency between the provisions of this Agreement relating to the Digital Certificate and the provisions of the Digital Certificate Documents, the FunbCA Subscriber Agreement shall prevail. The rights and obligations of Subscriber and FUNB under this Agreement and the Online Transactions (or any other transactions between the parties) are not conditioned on either party's compliance with anything contained in the Digital Certificate Documents.

(b) Subscriber acknowledges that, after a User has received a Digital Certificate, Password and ID from the FunbCA, anyone who uses the Digital Certificate belonging to that User together with that User's Password and ID will be able to access and use the FX Website on behalf of Subscriber as contemplated by this Agreement. Accordingly, Subscriber shall not allow anyone to use a Digital Certificate, Password or ID belonging to a User other than the User who has received the same from the FunbCA. Subscriber hereby authorizes FUNB to deliver a temporary password to each User for the initial login to the FX Website for the purposes of applying for a Digital Certificate and to establish a permanent Password and ID. The Subscriber shall inform FUNB immediately when a User is no longer authorized to use the FX Website. Subscriber shall be solely responsible for controlling, and preventing any unauthorized use of, each Digital Certificate, Password and ID, and Subscriber shall be liable for any and all Online Transactions and account debits, credits and transfers resulting from, or occurring in response to, any electronic transmission, instruction, signal, entry or other communication to FUNB through the FX Website made using any Digital Certificate, Password and ID, whether or not it was authorized by Subscriber, was initiated by a User or resulted from an error in entering any information or command, and all such communications shall be deemed to have been sent by Subscriber for purposes of this Agreement.

(c) FUNB reserves the right, at any time and from time to time, for any reason or no reason, and without notice, to upgrade, modify, suspend, discontinue, or terminate the FX Website or to revoke any Digital Certificate, Password or ID, or to deny Subscriber and its Users access to the FX Website or any part thereof, and the respective rights and obligations of Subscriber and FUNB under the Online Transactions (or any other transactions between the parties) shall not be impaired or otherwise affected by such action. In addition, FUNB may require Subscriber to replace or erase any Digital Certificate or change any Password or ID at any time.

1

3. **Procedures for Entering into Online Transactions**

(a) To initiate any Online Transaction with FUNB through the FX Website, Subscriber must make certain entries regarding the financial particulars of the proposed Online Transaction on the appropriate screen displays of the FX Website in accordance with instructions provided in FUNB's "Online FX User's Guide", including currency codes, currency amounts, and the side of the currency exchange Subscriber is taking. It shall be the responsibility of Subscriber that each User will have received, read and understood the Online FX User's Guide prior to that User using the FX Website. FUNB reserves the right to revise or replace the Online FX User's Guide without Subscriber's consent by delivering to Subscriber a copy of the revision or replacement.

(b) When the requisite entries have been made to initiate an Online Transaction, then the FX Website will display an exchange rate for the proposed Online Transaction ("*Exchange Rate*"), subject to a time-out function. Subscriber may accept or reject the Exchange Rate by making the appropriate entry on the FX Website before it is timed-out, or otherwise reject the Exchange Rate by allowing it to be timed-out. By entering its acceptance of the Exchange Rate before it is timed-out, Subscriber will be deemed to have made an offer to FUNB for the proposed Online Transaction at that Exchange Rate. Upon FUNB's issuance through the FX Website of a deal confirmation number for that Online Transaction, FUNB will be deemed to have accepted such offer and a contract for such Online Transaction shall be deemed to have been entered into by Subscriber and FUNB. If FUNB does not issue a confirmation number for the proposed Online Transaction through the FX Website, Subscriber's offer to enter into the proposed Online Transaction shall be deemed rejected and no contract for the proposed Online Transaction will have been formed. The FX Website Records shall be conclusive and binding on the parties with respect to the foregoing. "*FX Website Records*" means the books and records of FUNB (in electronic form or otherwise) as they relate to the FX Website, including any stored on or generated by any computer system, hardware or software or any other system, facility or service on which the FX Website directly or indirectly operates ("*Operating System*"), whether such Operating System is owned by FUNB or by any independent contractor or supplier engaged by FUNB (or an affiliate of FUNB) in order for the FX Website to operate ("*System Supplier*").

(c) Once a confirmation number for an Online Transaction has been issued by FUNB through the FX Website, Subscriber may not (i) withdraw, cancel, or amend its offer for that Online Transaction, or (ii) without the prior written consent of FUNB, amend the terms of that Online Transaction. Subscriber acknowledges that a confirmation number may be issued instantly when an Exchange Rate has been accepted, and that Online Transactions bind it as principal for its own account.

(d) Exchange Rates quoted to Subscriber may be different from those which FUNB may quote to any of its other customers, and no representation or warranty is made that any Exchange Rate is the best price available to Subscriber. FUNB reserves the right at any time, without notice, to not quote an Exchange Rate to Subscriber, or to not issue a confirmation number, for any proposed Online Transaction for any reason or no reason.

4. **Terms and Conditions of Online Transactions**

(a) The terms and conditions of each Online Transaction entered into by FUNB and Subscriber shall be evidenced by this Agreement and the FX Website Records. In addition, if Subscriber and FUNB are parties to any agreement governing any foreign exchange transactions (including any ISDA Master Agreement published by the International Swaps and Derivatives Association, Inc.), then this Agreement shall be supplemental to that agreement, and the Online Transactions shall be subject to its terms and conditions (except when they are contrary to the provisions hereof, this Agreement will govern, and for that purpose any procedures for executing or confirming transactions specified in that other agreement shall be disregarded with respect to the Online Transactions).

(b) Each Online Transaction involves the Subscriber's purchase from FUNB of one currency ("*Bought Currency*") in exchange for Subscriber's sale to FUNB of another currency ("*Sold Currency*") at the applicable exchange rate. For each Online Transaction, Subscriber shall deliver to FUNB the required amount of Sold Currency on the date the parties enter into that Online Transaction regardless of the value date specified for that Online Transaction. Upon FUNB's receipt of the required amount of Sold Currency, FUNB shall deliver to Subscriber the required amount of Bought Currency on the value date of that Online Transaction. For each Online Transaction, the delivery of any currency to either party shall be made to a reasonably acceptable bank account as such party shall have specified in delivery instructions for that Online Transaction either (i) on the FX Website, or (ii) if not so specified, then by written notice.

(c) If the delivery of any Bought Currency or Sold Currency cannot be made because the value date of the relevant Online Transaction is not a day on which banks in the relevant place of receipt settle foreign exchange in the relevant currency, the value date thereof shall be the next following day on which such settlement can be made. In addition, whenever the same currency is due by both parties on the same day under two or more foreign exchange transactions (whether or not any is an Online Transaction), then the delivery obligations of the parties on that day in that currency for those foreign exchange transactions will be discharged automatically, and if one party's delivery obligation in that currency would have been greater, replaced by an obligation of such party to deliver the difference to the other party.

2

(d) Subscriber acknowledges that currency exchange rates are highly volatile and impossible to predict, that the value of a currency relative to another currency can rise and fall substantially over short periods, that Subscriber understands those risks and the consequences of entering into the Online Transactions through the FX Website (whether financial, accounting, tax, legal, or otherwise) based upon its own evaluation of the Online Transactions or upon the advice of its professional advisors, that neither FUNB nor any of its affiliates is acting as an agent, broker, advisor or fiduciary of, or a joint venturer with, Subscriber in any respect in connection with the Online Transactions or the FX Website, regardless of whether FUNB acts as an advisor or fiduciary to Subscriber on other matters or provides Subscriber from time to time with market information, views or recommendations.

## 5. Confidentiality & Restriction on Use

(a) Subscriber acknowledges that the FX Website, the Operating System and all programs, files, data or other information stored, contained, or operating at, in or through, the FX Website or Operating System are the exclusive property of FUNB or a System Supplier, that other foreign exchange customers of FUNB will be using the FX Website to conduct their own transactions with FUNB, and that Subscriber agrees for the respective benefits of FUNB and each System Supplier that neither Subscriber nor any User will (i) access or use the FX Website or the Operating System for any purpose other than as a facility through which Online Transactions may be conducted; (ii) alter or interfere with the FX Website, the Operating System or any of the programs, files, data or other information stored, contained, or operating at, in or through, the FX Website or the Operating System; (iii) sell any information obtained from or through the FX Website or the Operating System, including any Exchange Rate; (iv) use any such information for any purpose other than to consider, evaluate, propose, enter into, review or otherwise conduct Online Transactions, or (v) disclose any such information to any third party, except Subscriber may make any such disclosure (1) to Associated Persons, (2) as required by law, or (3) pursuant to any legal or regulatory process, action or proceeding, whether Subscriber is responding thereto or has initiated the same to protect its interests or enforce its rights. "Associated Persons" means the affiliates, directors, officers, employees, agents, advisors, auditors, attorneys, and regulators of Subscriber and those of its affiliates.

(b) Subscriber further acknowledges and agrees that any Operating System owned by a System Supplier may capture any or all data generated by any electronic transmission, instruction, signal, entry or other communication to FUNB through the FX Website, that therefore such System Supplier will have access to information concerning Subscriber's Online Transactions and its FX Website activities, and that such System Supplier is authorized to disclose any or all data captured by the Operating System provided it does so without disclosing the names of FUNB's customers.

## 6. General Terms

This Agreement shall be binding upon and inure to the exclusive benefit of the parties hereto and their respective successors and permitted assigns, shall be governed by the law (and not the law of conflicts) of the State of New York, may be amended only by written agreement of the parties, and except as otherwise provided herein, is the entire agreement and understanding of the parties as to its subject matter. Rights and remedies hereunder are cumulative and not exclusive of any available either by law or under any other written agreement between the parties; any failure or delay in exercising any right or remedy is not a waiver thereof; a single or partial exercise of any right or remedy will not preclude any further exercise thereof; and any purported transfer of rights or obligations under this Agreement without the other party's written consent is void.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof. This Agreement is dated as of
April 6, 2000

FIRST UNION NATIONAL BANK

By: _Alicia Rodriguez_

Name: Alicia Rodriguez
Title: Assistant Vice President

SUBSCRIBER:
CASA DE CAMBIO MAJAPARA SA DE CV

[NAME OF PARTY]

By: _____

Name:
Title:

3

**B**



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                    Date:          December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                    Deal Source:          EFOREX

| | |
|---|---|
| Deal Number: | 8347911 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |

| | | |
|---|---|---|
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 5,000,000.00 | EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 7,332,500.00 | USD |
| Rate: | 1.46650000 | |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

| | | |
|---|---|---|
| Wachovia Delivers: | 5,000,000.00 | EUR |
| | Account Name: | BAYERISCHE LANDESBK-MUNICH, GERMANY |
| | Account Number: | |
| | Payment Method: | By Outgoing Wire Payment |
| | Pay To: | BAYERISCHE HYPO-UND VEREINSBANK AG MUNICH GERMANY MUNICH GERMANY |
| | Account: | /DE10700202705803611035 |
| | For Account Of: | MAJAPARA CASA DE CAMBIO SA DE CV |
| | Intermediary Bank: | |
| | Sender to Receiver Information: | |

| | | |
|---|---|---|
| | Detailed Information: | BO CASA DE CAMBIO MAJAPARA SA DE CV |
| Wachovia Receives: | 7,332,500.00 | USD |
| | Account number: | PHILNY |
| | Payment Method: | By Incoming International Payment |
| | Pay to: | WACHOVIA BANK N.A.-NEW YORK |

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd, 1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX
December 11, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:

Deal Source:                                    EFOREX

Wachovia confirms the following: Spot Deal

Deal Number:                          8347951
Sequence Number:                      0

Trade Date:                           December 05, 2007
Value Date:                           December 07, 2007

MAJAPARA CASA DE CAMBIO - MEXICO buys:      1,000,000.00        EUR
MAJAPARA CASA DE CAMBIO - MEXICO sells:     1,466,500.00        USD
Rate:                                        1.46650000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        1,000,000.00        EUR
                          Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                              GERMANY

                          Account Number:
                          Payment Method:     By Outgoing Wire Payment
                          Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                              MUNICH GERMANY
                                              MUNICH GERMANY
                          Account:            /DE10700202705803611035
                          For Account Of:     MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:

                          Detailed Information:
                                              BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        1,466,500.00        USD
                          Account number:     PHILNY
                          Payment Method:     By Incoming International Payment
                          Pay to:             WACHOVIA BANK N.A.-NEW YORK

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                      Date:          December 12, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                 Deal Source:            EFOREX

| | |
|---|---|
| Deal Number: | 8348101 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 2,000,000.00    EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 2,934,400.00    USD |
| Rate: | 1.46720000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:          2,000,000.00        EUR
                            Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                                GERMANY

                            Account Number:
                            Payment Method:     By Outgoing Wire Payment
                            Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                                MUNICH GERMANY
                                                MUNICH GERMANY
                            Account:            /DE10700202705803611035
                            For Account Of:     MAJAPARA CASA DE CAMBIO SA DE CV
                            Intermediary Bank:
                            Sender to Receiver Information:


                            Detailed Information:
                                                BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:          2,934,400.00        USD
                            Account number:     PHILNY
                            Payment Method:     By Incoming International Payment
                            Pay to:             WACHOVIA BANK N.A.-NEW YORK

---

**Notify Wachovia Immediately If Not In Agreement:**

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:                    December 11, 2007

Wachovia confirms the following:Spot Deal          Deal Source:          EFOREX

| | | |
|---|---|---|
| Deal Number: | 8347764 | |
| Sequence Number: | 0 | |
| Trade Date: | December 05, 2007 | |
| Value Date: | December 07, 2007 | |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 5,000,000.00 | EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 7,333,000.00 | USD |
| Rate: | 1.46660000 | |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:      5,000,000.00          EUR
                        Account Name:         BAYERISCHE LANDESBK-MUNICH,
                                              GERMANY

                        Account Number:
                        Payment Method:       By Outgoing Wire Payment
                        Pay To:               BAYERISCHE HYPO-UND VEREINSBANK AG
                                              MUNICH GERMANY
                                              MUNICH GERMANY
                        Account:              /DE10700202705803611035
                        For Account Of:       MAJAPARA CASA DE CAMBIO SA DE CV
                        Intermediary Bank:
                        Sender to Receiver Information:


                        Detailed Information:
                                              BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:      7,333,000.00          USD
                        Account number:       PHILNY
                        Payment Method:       By Incoming International Payment
                        Pay to:               WACHOVIA BANK N.A.-NEW YORK

---

## Notify Wachovia Immediately If Not In Agreement:

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                      Date:          December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

                                                    Deal Source:              DIRECT

Wachovia confirms the following:Spot Deal

    Deal Number:                        8347811
    Sequence Number:                    0

    Trade Date:                         December 05, 2007
    Value Date:                         December 07, 2007
    MAJAPARA CASA DE CAMBIO - MEXICO buys:   5,000,000.00      EUR
    MAJAPARA CASA DE CAMBIO - MEXICO sells:  7,338,000.00      USD
    Rate:                               1.46760000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        5,000,000.00        EUR
                          Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                              GERMANY

                          Account Number:
                          Payment Method:     By Outgoing Wire Payment
                          Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                              MUNICH GERMANY
                                              MUNICH GERMANY
                          Account:            /DE10700202705803611035
                          For Account Of:     MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:




                          Detailed Information:
                                              BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        7,338,000.00        USD
                          Account number:     PHILNY
                          Payment Method:     By Incoming International Payment
                          Pay to:             WACHOVIA BANK N.A.-NEW YORK

┌─────────────────────────────────────────────────────────────────────┐
│ Notify Wachovia Immediately If Not In Agreement:                      │
└─────────────────────────────────────────────────────────────────────┘

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd, 1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX
December 11, 2007

MAJAPARA CASA DE CAMBIO - MEXICO                    Date:
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Deal Source:                    EFOREX

Wachovia confirms the following: Spot Deal

| | |
|---|---|
| Deal Number: | 8347860 |
| Sequence Number: | 0 |
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 3,000,000.00    EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 4,398,300.00    USD |
| Rate: | 1.46610000 |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:      3,000,000.00        EUR
                        Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                            GERMANY

                        Account Number:
                        Payment Method:     By Outgoing Wire Payment
                        Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                            MUNICH GERMANY
                                            MUNICH GERMANY
                                            /DE10700202705803611035
                        Account:            MAJAPARA CASA DE CAMBIO SA DE CV
                        For Account Of:
                        Intermediary Bank:
                        Sender to Receiver Information:


                        Detailed Information:
                                            BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:      4,398,300.00        USD
                        Account number:     PHILNY
                        Payment Method:     By Incoming International Payment
                        Pay to:             WACHOVIA BANK N.A.-NEW YORK

---

**Notify Wachovia Immediately If Not In Agreement:**

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.

Thank you for your business.



Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone.(800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

Date:                                    December 12, 2007

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Deal Source:                            EFOREX

Wachovia confirms the following:Spot Deal

Deal Number:                    8347871
Sequence Number:                0

Trade Date:                     December 05, 2007
Value Date:                     December 07, 2007

MAJAPARA CASA DE CAMBIO - MEXICO buys:     5,000,000.00        EUR
MAJAPARA CASA DE CAMBIO - MEXICO sells:    7,330,000.00        USD
Rate:                                      1.46600000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:          5,000,000.00        EUR
                            Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                                GERMANY

                            Account Number:
                            Payment Method:     By Outgoing Wire Payment
                            Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                                MUNICH GERMANY
                                                MUNICH GERMANY
                            Account:            /DE10700202705803611035
                            For Account Of:     MAJAPARA CASA DE CAMBIO SA DE CV
                            Intermediary Bank:
                            Sender to Receiver Information:

                            Detailed Information:
                                                BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:          7,330,000.00        USD
                            Account number:     PHILNY
                            Payment Method:     By Incoming International Payment
                            Pay to:             WACHOVIA BANK N.A.-NEW YORK

## Notify Wachovia Immediately If Not In Agreement:

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.

C

**Wachovia Bank, National Association**

TERMS & CONDITIONS
FOR GLOBAL FINANCIAL
INSTITUTIONS



WACHOVIA

# Table of Contents

Introduction

Account Services 1

    Authorized Signatures 1

    Facsimile Signatures 1

    Statements 1

    Review of Statements/Reconciliation 1

    Availability of Funds 1

    Setoff and Security Interest 2

    Credit Interest 2

    Overnight Investment of Excess Funds 2

    Debit Interest 2

    Payment Terms/Compensation Methods 3

Electronic Transfers 3

    Authorization and Security Procedures 3

    Payment Orders 3

    Execution of Payment Orders 4

    Cancellation and Amendment of Payment Orders 4

    Payments in Currency 4

    Cut-Off Times 4

    Advice of Funds Transfers 4

    ACH 4

Check Services 5

    Check Disbursement Services 5

    Advice of Issuance 5

    Stop Payments 5

    USD Cash Letter 5

    Final Credit Service 7

    Global Check Clearing 7

    USD and Foreign Check Collection 7

Trade Services

    Letters of Credit 7

    Bank-to-Bank Reimbursements 7

    Documentary Collections 7

    Reimbursement Collections 8

Other Cash Management Services 8

Courier Services 8

Miscellaneous 8

    Assignment of Terms & Conditions 8

    Conflicts/Disputes Involving the Account 8

    Confidentiality

    Termination 9

    Applicable Laws 9

    Compliance with Law 9

    Waiver of Jury Trial 9

    Invalidity of Contract Provisions 9

    Indemnification 10

    Liability 10

    Waiver 10

    Legal Process 10

    Correspondent's Representations, Warranties and Covenants 10

    Entire Terms & Conditions 10

    Use of Correspondent's Account 11

U.S. Legal Holidays 11

11

# Table of Contents

Introduction ........................................................ 1

Account Services .................................................. 1

    Authorized Signatures ..................................... 1

    Facsimile Signatures ...................................... 1

    Statements ................................................ 1

    Review of Statements/Reconciliation ..................... 1

    Availability of Funds ..................................... 2

    Setoff and Security Interest ............................. 2

    Credit Interest ........................................... 2

    Overnight Investment of Excess Funds .................... 2

    Debit Interest ............................................ 3

    Payment Terms/Compensation Methods ..................... 3

Electronic Transfers ............................................. 3

    Authorization and Security Procedures ................... 3

    Payment Orders ............................................ 4

    Execution of Payment Orders .............................. 4

    Cancellation and Amendment
of Payment Orders ......................................... 4

    Payments in Currency ..................................... 4

    Cut-Off Times ............................................. 4

    Advice of Funds Transfers ................................ 4

    ACH ....................................................... 4

Check Services ................................................... 5

    Check Disbursement Services .............................. 5

    Advice of Issuance ....................................... 5

    Stop Payments ............................................ 5

    USD Cash Letter .......................................... 5

    Final Credit Service ..................................... 7

    Global Check Clearing .................................... 7

    USD and Foreign Check Collection ........................ 7

Trade Services ................................................... 7

    Letters of Credit ........................................ 7

    Bank-to-Bank Reimbursements ............................. 7

    Documentary Collections .................................. 8

    Reimbursement Collections ................................ 8

Other Cash Management Services ................................... 8

Courier Services ................................................. 8

Miscellaneous .................................................... 8

    Assignment of Terms & Conditions ........................ 8

    Conflicts/Disputes Involving the Account ................ 8

    Confidentiality .......................................... 9

    Termination .............................................. 9

    Applicable Laws .......................................... 9

    Compliance with Law ...................................... 9

    Waiver of Jury Trial ..................................... 9

    Invalidity of Contract Provisions ....................... 10

    Indemnification .......................................... 10

    Liability ................................................ 10

    Waiver ................................................... 10

    Legal Process ............................................ 10

    Correspondent's Representations,
Warranties and Covenants ................................. 10

    Entire Terms & Conditions ............................... 11

    Use of Correspondent's Account .......................... 11

U.S. Legal Holidays .............................................. 11

# Introduction

These Terms & Conditions form an agreement ("Terms & Conditions") between Wachovia Bank, National Association ("Wachovia") and each customer ("Correspondent") maintaining one or more U.S. Dollar denominated demand deposit accounts with Wachovia (all such accounts are herein called the "Account") in the United States of America (U.S.). For the purpose of these Terms & Conditions, a Correspondent is defined as a bank or nonbank financial institution holding an Account on Wachovia's books. By accepting this documentation, or by using the Account, the Correspondent agrees to be legally bound by these Terms & Conditions, as amended from time to time. Other terms and conditions contained in a separate agreement or service description between Correspondent and Wachovia related to certain account services provided by Wachovia shall apply to the Account also. All prior general terms and conditions are superseded by this document.

Wachovia reserves the right to amend these Terms & Conditions, and shall provide prior notice of such changes. Changes to these Terms & Conditions required by law or regulation will be implemented immediately otherwise upon reasonable notice to Correspondent.

# Account Services

## Authorized Signatures

Correspondent may set forth in a document to be provided to Wachovia the names, signatures and titles of all persons duly authorized and who have complete authority to bind Correspondent (subject to any limits described by Correspondent) in all transactions involving the Account, including, without limitation: to sign checks, drafts, instruments, bills of exchange, acceptances and/or other similar documents from Correspondent's Account(s); to endorse checks, instruments, drafts, certificates of deposit, bonds, and/or other evidences of indebtedness and orders payable to, owned or held by Correspondent; to accept drafts, acceptances, instruments and/or other evidences of indebtedness payable at or through Wachovia; to initiate payment orders and other orders for the movement of funds; to waive presentment, demand, protest, and notice of protest or dishonor of any check(s), instrument(s), draft(s), acceptances, instruments or other evidences of indebtedness made, drawn or endorsed by Correspondent; to give instructions to Wachovia regarding any of the foregoing, and otherwise to deal with Wachovia in connection with the foregoing activities and all transactions involving the Account (each such person being hereinafter sometimes referred to as an "authorized signer" or as an "authorized representative"). Correspondent is responsible for notifying Wachovia of any changes to the authorized signers. Wachovia will not be bound by any changes until receipt of a revised document.

Alternatively, Correspondent may utilize authenticated SWIFT message formats or other agreed upon message formats to communicate with Wachovia and Wachovia shall be entitled to rely upon all such messages as authorized by Correspondent.

## Facsimile Signatures

If Correspondent uses a facsimile signature or endorsement, whether by machine, stamp or otherwise, that is not made by a handwritten signature on any checks, drafts, notes or other negotiable instruments with or without a designation of the party making such signature or endorsement, Correspondent agrees that Wachovia may pay and charge Correspondent's Account for checks, drafts, notes or other similar documents bearing or purporting to bear the facsimile signature or endorsement of any person or persons required to sign, regardless of by whom or by what means the actual or purported facsimile signature or endorsement may have been affixed (whether or not authorized), and regardless of by whom or by what means the check, draft, note or other similar document was created (whether or not authorized). Wachovia is not liable for any use of a facsimile signature or endorsement device. If Correspondent uses a facsimile signature or endorsement, Correspondent bears the risk of any unauthorized use of Correspondent's facsimile method.

## Statements

Wachovia will provide Correspondent with detailed transaction and balance information electronically, through SWIFT, telex, Wachovia's proprietary PC or Web-based systems, courier or mail.

In addition, debit and/or credit advices will be sent to Correspondent either electronically or by mail or courier, at Correspondent's request, depending upon the service and/or product.

## Review of Statements/Reconciliation

Correspondent is responsible to promptly and carefully examine all transaction and balance information and to immediately notify Wachovia as soon as possible of any irregularities, alterations, erroneous payments or credits or other problems which occur in connection with the Account. All Account information contained in such statements (mail or electronic), including balance and transaction information, is considered correct unless Correspondent delivers to Wachovia written notification regarding any problems within 30 calendar days of the closing date of the statement month. Such notification must specifically describe the transaction and include photocopies of any relevant documents along with: (1) Correspondent's Account title and Account number, (2) dollar amount of the transaction, (3) Wachovia transaction reference, if available, (4) Correspondent transaction reference and (5) the nature of the problem.

1.

Wachovia's customer service units are available for inquiries on specific transactions regarding posted entries and/or transactions that were not entered in Correspondent's Account when expected. Wachovia abides by the rules and guidelines of the International Financial Services Association and the New York Clearing House Association L.L.C. and its subsidiary companies with regard to the payment of interbank compensation. Wachovia reserves the right to make a final reasonable determination, whether and in what amount an adjustment, if any, shall be made.

If Correspondent is able to prove that Wachovia failed to exercise ordinary care in paying any unauthorized transaction and that Wachovia's failure directly and substantially contributed to the loss, then the loss will be allocated between Wachovia and Correspondent based on the extent to which Wachovia's respective failure to exercise ordinary care contributed to the loss. In that regard, and as disclosed elsewhere in these Terms & Conditions, Wachovia processes checks and other items by automated means and does not visually examine or verify signatures on all checks or other items. Correspondent agrees that Wachovia does not fail to exercise ordinary care because Wachovia uses these automated procedures. Correspondent also agrees that Wachovia does not fail to exercise ordinary care if the items were forged or altered in such manner (as by unauthorized use of a facsimile machine, photocopy machine, computer equipment or otherwise) that a reasonable person would not detect the forgery or alteration.

If Correspondent fails to discover and report these or any other errors or discrepancies within the 30 calendar day period, Correspondent loses any and all rights it may have to assert the error or discrepancy against Wachovia, regardless of whether Wachovia has exercised ordinary care with respect to the transaction.

## Availability of Funds

Deposits are subject to verification as to dollar amount and number of items. Each deposited item including cash letter items, and each other instruction, order, electronic funds transfer or advice received for credit to the Account is credited subject to final payment. Wachovia decides in its sole discretion what process will be used to obtain final payment of an item and may use other banks in the process. Provisionality or finality of an electronic funds transfer will be governed by the rules of the funds transfer system used in executing such funds transfer.

## Setoff and Security Interest

If Correspondent ever owes Wachovia, acting in any capacity, money as a depositor, borrower, guarantor, judgment debtor or in connection with any trade payment or otherwise, including any obligation owed

to a financial institution acquired by Wachovia, and it becomes due, Wachovia has the right under the law (called "setoff") and under these Terms & Conditions to use the money from Correspondent's Account to pay the debt. If the debt and the Account are in different currencies, Correspondent agrees that Wachovia may use the funds in the Account to purchase the currency of the debt at the then spot rate to setoff. Wachovia may use the Account to pay the debt even if the withdrawal results in an interest penalty or the dishonor of checks. In the case of both the Correspondent's head office and its branch(es) maintaining deposits with Wachovia, both the Correspondent's head office and its branch(es) agree that Wachovia may use the money in their individual Accounts to satisfy any one of their obligations.

Correspondent grants Wachovia a continuing lien and security interest in and right of setoff against all of Correspondent's right, title and interest in and to all deposits and accounts with any Wachovia offices located anywhere in the world to secure payment of Correspondent's obligations to Wachovia acting in any capacity. The security interest and right of setoff granted by these Terms & Conditions are consensual and are in addition to any other security interest or right of setoff that Wachovia may have. To the extent any of the funds to be setoff are entitled to any exemption from execution, levy, attachment, garnishment, seizure or other legal or equitable process, then, to the maximum extent allowed by law, Correspondent hereby knowingly, affirmatively and unequivocally waives such exemption and consents to Wachovia's setoff against such funds as contemplated by these Terms & Conditions. Any pledge or assignment by Correspondent to third parties of deposits (including, without limitation, certificates of deposit) and other accounts for security purposes remains subject to Wachovia's right of setoff and security interest.

## Credit Interest

Regulation Q of the Federal Reserve Bank of the United States of America currently forbids payment of interest on demand deposits. Overnight investment of excess funds can be arranged within the parameters set forth below.

## Overnight Investment of Excess Funds

Under parameters set forth between Wachovia and Correspondent, excess funds may be invested offshore overnight in Eurodollars in Wachovia's Cayman Islands branch. Correspondent acknowledges that deposits in the Cayman Islands branch are not insured by the Federal Deposit Insurance Corporation; nor are the deposits insured by the United States Government, the United Kingdom Government or any agency thereof. Deposits are not payable nor guaranteed payable in the United States.

2.

## Debit Interest

Wachovia reserves the right to refuse to pay any item if it would result in an overdraft on the Account. However, Wachovia, acting in its sole discretion, may pay an item and create an overdraft and charge interest for such an overdraft in accordance with Wachovia's policy or in accordance with prior arrangements made between Wachovia and Correspondent.

Unless otherwise agreed in writing, Wachovia is under no obligation to permit any overdraft or to continue to permit any overdraft and may at any time require payment of an outstanding overdraft.

The amount of any overdraft which Wachovia permits to occur, i.e., the difference between the amount of the debit plus all applicable service charges or fees, if any, and the available balance in the Account, shall be due and payable immediately and interest shall accrue thereon until paid in full at a rate determined by Wachovia not to exceed the maximum lawful rate of interest. Correspondent authorizes Wachovia to charge the Account or any other accounts of Correspondent with Wachovia or to apply any other property of Correspondent in Wachovia's possession or in which Wachovia has a security interest to satisfy such overdraft and applicable interest.

## Payment Terms/Compensation Methods

### Rates and Payment Terms
Payment for the services shall be at Wachovia's rates in effect from time to time as agreed upon by both Wachovia and Correspondent.

Correspondent's Account will be charged for services through Account Analysis, an automated system, which calculates charges for balance and fee-based account services. Payment will be made by Correspondent as mutually agreed, by either direct charges or compensating balances.

There are three basic options available to Correspondent in deciding how to compensate Wachovia for the services provided. These are described below:

### Balance Compensation
Positive available balances, adjusted for reserves, would be valued at an earnings credit rate. The appropriate level of balances would be left in the Account by Correspondent at all times to cover the cost of services.

### Fee/Balance Compensation
Wachovia will provide Correspondent with a comprehensive statement which includes volumes, prices and the total service

charge. The total service charge is reduced by the interest Wachovia earns on the available balances maintained in Correspondent's Account. This earnings credit is calculated monthly as follows:

(Positive Available Balance — Reserve Requirement)
X
Earnings Credit Rate X # of Days in Month
# of Days in a Year

The earnings credit rate utilized in the calculation is a managed rate determined by Wachovia. This rate is market driven and allows Correspondent to receive a high earnings credit to offset service cost. If the earnings credit is less than the total service charge, the shortfall is billed to Correspondent's Account.

### Fee Compensation
Wachovia offers a fee option for all services provided. With this option, Correspondent may pay for all services on a monthly basis. Wachovia will debit the Account.

For all options, charges are detailed in the Account Analysis Statement, which Correspondent will receive on a monthly basis.

# Electronic Transfers

## Authorization and Security Procedures

All payment orders will be transmitted to Wachovia in compliance with Security Procedures as set forth below established between Wachovia and Correspondent. Correspondent will disclose Security Procedures only to its authorized representative(s) and establish internal controls to protect them from unauthorized disclosure. Wachovia will change Security Procedures immediately at Correspondent's request if Correspondent knows or suspects that they have become known by unauthorized persons. Wachovia will be entitled to presume that all payment orders which comply with Security Procedures are being transmitted by authorized representatives of Correspondent and Wachovia shall be entitled to rely thereon. If Correspondent or any of the Correspondent's authorized representatives have reason to believe that a Security Procedure may have been learned by an unauthorized person, Correspondent agrees to notify Wachovia immediately.

The following Security Procedures will be used to verify that Correspondent is the originator of a payment order, or other communication requesting an amendment, cancellation or other action regarding a payment order for the communications systems listed on the next page:

- For SWIFT, the SWIFT Authentication procedure in accordance with the SWIFT User Handbook as amended from time to time.
- For telex, the Wachovia test key or Correspondent's test key, as applicable.
- For PC and Web-based systems, the security procedure set forth in the applicable service agreement or service description between Wachovia and Correspondent.

Any other security procedures, including signature verification, that are not adequate under Article 4A of the Uniform Commercial Code of the State of New York should not be utilized by Correspondent. However, if Wachovia agrees to process payment orders that Correspondent delivers to Wachovia without using approved security procedures, Wachovia will not bear any responsibility or liability for any losses arising from processing such payment orders.

## Payment Orders

Correspondent may instruct that Wachovia debit Correspondent's Account and transfer funds for its own account, to other financial institutions, or pay third parties at other domestic or foreign financial institutions. If Wachovia receives a payment order from Correspondent to debit another account other than the Correspondent's own, Wachovia presumes that Correspondent has obtained the authorization to debit the account from the legal account holder and shall debit the account mentioned in the payment order. Payment orders may be transmitted to Wachovia in accordance with the terms set forth herein. Correspondent shall select and advise Wachovia of the means Correspondent will use of communicating payment orders, which may include SWIFT, telex and Wachovia's PC and Web-based systems.

## Execution of Payment Orders

Upon receipt of a payment order from Correspondent authenticated in accordance with the procedures contained herein, Wachovia is authorized to debit Correspondent's Account and transfer or pay funds upon value date. Wachovia is authorized to implement any instructions, including amendments and cancellations of prior payment orders, received (in accordance with the Security Procedures) according to Correspondent's initial payment order. Duplicate payment orders initiated by Correspondent may be acted upon by Wachovia without responsibility. Acceptance of payment orders is at Wachovia's sole discretion. Wachovia requests that Correspondent does not send payment orders more than 10 calendar days in advance. Unless otherwise instructed by Correspondent, Wachovia may use any means, intermediaries or funds transfer systems which may have operating rules governing the execution of payment orders to effect the transfer as Wachovia, in its sole discretion, shall determine. Wachovia may handle payment orders received from Correspondent and other customers in any order selected by Wachovia. Unless otherwise agreed, Wachovia is not responsible for any losses arising

from an execution of a payment order by a certain time of its funds transfer business day or for any losses arising from a conditional payment order.

## Cancellation and Amendment of Payment Orders

When Wachovia accepts a payment order, it cannot thereafter be cancelled or amended. Nonetheless, if Correspondent requests cancellation or amendment of an accepted payment order, Wachovia will attempt to cancel or amend, but this may require the consent of third parties.

## Payments in Currency

For orders of transfer of U.S. Dollars to a foreign country, the beneficiary's bank may elect to pay the beneficiary in foreign currency at the beneficiary bank's rate of exchange.

Payment orders in foreign currency are done at Wachovia's then current selling or buying market rate for wire transfers. If a payment order is cancelled or amended, any refund of currency resulting from these shall be in U.S. Dollars. Refunds of foreign currency orders shall be calculated at Wachovia's then current selling or buying rate for U.S. Dollars. Correspondent bears all risk of loss due to fluctuation in the rate of exchange. No transfer fee shall be refunded. Correspondent is responsible for any charges related to cancellation or amendment of U.S. Dollar and foreign currency payment orders.

## Cut-off Times

For same day delivery, payment orders must be received before the cut-off time for funds transfers on a business day as established by Wachovia from time to time. Payment orders or related requests received after the cut-off time or on a non-business day will be treated as received by Wachovia on Wachovia's next funds transfer business day. Wachovia will make reasonable efforts to execute all payment orders received prior to the cut-off deadlines.

## Advice of Funds Transfers

All debits and credits to the Account will appear on the SWIFT, PC, web, telex, courier or mail statements.

Optionally, Correspondent may request Wachovia to provide separate advices of debits/credits via SWIFT MT900 and MT910 messages, telex or mail.

## ACH

For ACH users, please refer to the Addendum to these Terms & Conditions, provided to Correspondent as a service description.

# Check Services

## Check Disbursement Services

Check Disbursements drawn on the Account will be debited on the date the item is presented to Wachovia. Wachovia encourages Correspondent to order checks through Wachovia. If Correspondent prefers to use its own vendor, Wachovia will provide Correspondent with detailed instructions on the required formats. A sample of the checks must be sent to Wachovia for inspection prior to their usage. Checks failing to pass inspection must be reprinted.

It is strongly recommended that the checks drawn on Wachovia be fully MICR (Magnetic Ink Character Recognition) encoded and include MICR-printed serial numbers. When checks are MICR encoded, serial numbers will appear on mail and electronic statements to assist Correspondent in identifying stolen or fraudulent items and in performing account reconciliation. Wachovia cannot be responsible for delays in posting of any item that is not fully MICR encoded.

## Advice of Issuance

Unless Correspondent and Wachovia have expressly agreed in writing that this requirement does not apply to Correspondent's Account, Wachovia requires that Correspondent promptly notify it whenever certain checks or drafts (described below) drawn on the Account are issued. If a failure to notify Wachovia of an issuance of check/draft results in a loss, such loss shall be borne by Correspondent. This notification is required for Correspondent's protection and in order to assist Wachovia in determining whether the specified checks or drafts drawn on the Account and presented for payment are forged or altered.

Correspondent shall send to Wachovia an Advice of Issuance either by authenticated SWIFT MT110 or tested telex for all checks issued in the amount of US$5,000 or greater. Each Advice of Issuance must include all the following specific details about the check or draft being issued by Correspondent:

- The date of the check or draft;
- The currency amount of the check or draft;
- The name of the payee (i.e., beneficiary) indicated on the check or draft; and
- The check number or draft number indicated on the check or draft.

Checks or other debit items drawn on the Account may be returned by Wachovia unpaid for any reason that such items are normally returned, for example, insufficient funds, uncollected funds, levies or attachments or for any other reason permitted by law and applicable regulations. Wachovia may also return a check or draft if no appropriate Advice of Issuance was received. In the case of insufficient or uncollected funds, Wachovia may at its sole discretion return the item or elect to pay such items and overdraw the Account. Such overdrafts are subject to debit interest. Wachovia may pay drafts drawn on Correspondent's Account in any order Wachovia may choose.

## Stop Payments

Correspondent may ask Wachovia to stop payment on checks drawn on Correspondent's Account if Wachovia has not paid the item. Correspondent can request stop payments on checks drawn on the Account by authenticated SWIFT message or by tested telex. To be effective, the stop payment request must provide the exact amount of the check, check number, the exact date of check, payee and the full account number on which it is drawn. If the information Correspondent gives Wachovia is not correct or if Correspondent does not provide Wachovia reasonable information requested about the check, Wachovia will not be responsible to effect the stop payment.

Wachovia also cannot be responsible if Wachovia is not able to identify the proper check because: 1) Correspondent has issued more than one check with the same serial number or 2) Correspondent has generated its checks by computer or in any other manner which does not produce a MICR-encoded check number on the check.

Wachovia is entitled to a reasonable period of time within which to effect the stop payment order. For purposes of these Terms & Conditions, a "reasonable time" means until the end of the business day following the day on which the stop payment order was received by Wachovia. Wachovia is not liable for any checks paid against the Account until the stop payment is effected.

Stop payment orders are valid for six months unless Correspondent designates a longer period of time when placing the stop payment order. Correspondent may extend a stop payment order by notifying Wachovia via SWIFT or tested telex prior to the expiration of the existing stop payment order.

## USD Cash Letter

Wachovia agrees to receive USD Cash Letter shipments from Correspondent delivered to Wachovia at its designated offices. Items eligible for USD Cash Letter deposits include:

- U.S. Dollar commercial checks drawn on banks in the United States or Canada;
- U.S. Dollar bank drafts payable in the United States;
- Money orders issued by bank in the United States ;
- International Postal Money Orders issued by the U.S. Postal Service;
- U.S. Dollar Travelers Checks drawn on institutions in the United States.

This service cannot be used to transport bank notes, coins or any type of negotiable securities. Items drawn on points outside of the United States should not be included in Cash Letter shipments, with the exception of U.S. dollar checks drawn on banks in Canada. All deposited items are subject to final payment.

*Availability of Funds*

For USD Cash Letters received prior to processing cut-off deadlines established by Wachovia, Correspondent will receive availability of all items in accordance with Wachovia's predetermined float availability assignments.

*Deposit Preparation*

Travelers Checks should be sorted into separate batches from all other acceptable items and deposited under separate deposit tickets. Items should be batched in lots of no more than 250 items with a separate tape listing for each. Batch totals should be listed on the pre-encoded Cash Letter deposit ticket, supplied by Wachovia; up to 3,000 checks may be deposited under one deposit ticket. An adding machine tape including batch amount total and account number must accompany each Cash Letter deposit. The total number of checks, for all batches, must also be recorded on the Cash Letter deposit ticket. Wachovia is not responsible for any loss related to cash letters for which deposit tickets are missing or improperly completed.

Correspondent must maintain appropriate records of the front and back of the check to enable prompt reconstruction of documents in the event of total loss in transit. Users of Wachovia's Cash Letter Service must be mindful that packages are exposed to the possibility of loss or damage.

Wachovia requires Correspondent to protect against unauthorized negotiation by properly endorsing all acceptable items specifically to the order of Wachovia Bank, National Association. The endorsement should be placed in black or dark ink on the back of each check so that the endorsement is wholly contained in the area 3.0 inches from the leading edge of the check and 1.5 inches from the trailing edge of the check. Optional information may be included provided the inclusion of such information does not interfere with the readability of the endorsement.

It is recommended that Correspondent include its account number and unique reference number within the endorsement of each check. If an alternate account number, other than the original depositing account, is to be used for return item processing, such instructions and the alternate account number must be included on the endorsement of each check. Wachovia shall use reasonable efforts to follow Correspondent's instructions in debiting returns to Correspondent's alternate account.

*Deliveries in Transit*

Unless prior arrangements have been made, Wachovia assumes no responsibility for Cash Letter packages with respect to pick-up or while en route to the designated check processing center. Wachovia is not responsible for the actions, omissions and/or negligence of the courier regarding failure to pick up the package or loss of the package or damage to its contents while in the possession of courier, or any late delivery or non-delivery of the package.

For the purpose of determining liabilities, Wachovia will not be deemed to have received or have any liability with respect to any item until the item has physically been received by Wachovia at the address of which we notify you from time to time.

If a Cash Letter shipment should be lost in transit between Correspondent and the receiving center for Wachovia, Wachovia agrees to provide Correspondent with provisional credit within 10 business days after its receipt of two legible copies (front and back) of each of the items which make up the lost remittances. Legible copies, properly indemnified, should be received by Wachovia not later than 45 calendar days after the original remittance(s) was/were lost. Wachovia will then, for a period of six months commencing on the date Correspondent's Account is provisionally credited, initiate an effort to collect on the copies of the original instruments. Correspondent will retain use of the full value of the remittances (subject to normal returns). At the end of the six month period, Wachovia will debit Correspondent's Account for the full value of any of the uncollected copies and will provide Correspondent with a list of all of the uncollected copies.

If Correspondent furnishes Wachovia with two legible copies of each item after the prescribed 45 calendar day period as described above, Wachovia, will attempt collection on the copies and pass credit due Correspondent on an item by item basis. After receipt of the copies, a collection effort will be made for a period of 60 calendar days at which time copies of files on any uncollected copies will be forwarded to Correspondent and Wachovia will close its files.

*Adjustments*

Cash Letters will be credited for the original amount. Errors, such as incorrectly listed or unlisted items, will be adjusted by debiting or crediting the Account under advice. Correspondent may elect to receive automatic SWIFT/telex advices for adjustments in any amount in addition to their inclusion on Correspondent's account statements.

Should an item be missing from Correspondent's remittance processed at Wachovia, Wachovia will notify Correspondent by telex or SWIFT. When an image of the missing item is available, Wachovia will credit Correspondent's Account and attempt to collect funds by entering the

image for collection and Wachovia will not charge the Correspondent's Account for a period of 60 calendar days after which Correspondent's Account will be charged pending any subsequent collection.

*Return Item Processing*

All items deposited by Correspondent with Wachovia which are returned unpaid for any reason will be returned to Correspondent as soon as possible. Wachovia will provide advice by SWIFT or telex of any unpaid item. Wachovia shall not redeposit any returned item under any circumstance in the Cash Letter Service. Correspondent's Account will be debited for the face value of the returned item, plus any applicable fees regardless of whether the Account has sufficient funds. Correspondent is liable for all returned items and drawee bank claims whether Correspondent's Account is open or has been closed.

## Final Credit Service

Wachovia provides a Final Credit Service under the terms of a separate agreement that can be provided to Correspondent upon request.

## Global Check Clearing

Wachovia provides Global Check Clearing services to act as Correspondent's clearing agent of foreign checks and drafts. Wachovia agrees to process foreign currency items drawn in the currency of the host country on a cash letter basis for USD equivalent credit to Correspondent's Account. Correspondent may also include USD items drawn on foreign countries in their Global Check Clearing deposit.

A list of currently eligible currencies and countries is provided at service implementation. The list of currencies accepted by Wachovia on a cash letter basis is subject to change without notice. Wachovia, at its sole discretion, may determine not to process any item submitted under the Global Check Clearing service.

Correspondent shall follow the deposit preparation procedures as defined under the "USD Cash Letter" section of this document using pre-printed Global Check Clearing deposit tickets that are provided by Wachovia.

Wachovia shall provide daily foreign exchange rates for each currency accepted under the Global Check Clearing service. Wachovia shall not be liable for the use of any incorrect rate listed on Correspondent's deposit ticket, or any fluctuation in the foreign exchange rate due to courier delays in transit of the deposit.

Any deposited item returned for any reason will be charged back to Correspondent's Account at Wachovia's selling rate of the foreign currency. Return items are subject to the rules and regulations of the country where the payor bank is located.

## USD and Foreign Check Collection

Items received for collection shall not be credited to Correspondent's Account unless and until Wachovia has received payment therefore unless otherwise agreed upon. Collection items may be returned in accordance with prevailing law. Wachovia shall, as agent for Correspondent, send such items through its customary collection channels. All fees associated with the collection of such items will be deducted from the proceeds of the transaction prior to credit to Correspondent's Account.

# Trade Services

## Letters of Credit

Wachovia provides letter of credit services in accordance with International Chamber of Commerce Publication Number 500, entitled: *Uniform Customs and Practice for Documentary Credits ("UCP500")*, and the International Standby Practices, International Chamber of Commerce Publication Number 590 or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wachovia for use. Wachovia provides letter of credit services at its international processing centers in the U.S. and its overseas branch locations.

All letter of credit charges and associated assessments will be accumulated and charged to Correspondent's Account, unless otherwise indicated, on the date of payment/acceptance or at expiration. Communications will be via authenticated SWIFT, tested telex or original Letter of Credit mailed via courier authenticated by security procedures approved by Wachovia.

## Bank-to-Bank Reimbursements

Wachovia also provides reimbursement services in accordance with the International Chamber of Commerce Publication Number 525, entitled: *Uniform Rules for Bank to Bank Reimbursements under Documentary Credits ("URR525")*, or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wachovia for use. Authorizations to reimburse (Authorizations) and requests for reimbursement (Claims) can be sent via authenticated SWIFT, tested telex, courier or through the mail.

Wachovia is not responsible for authenticating any Claim received via means other than authenticated SWIFT or tested telex. Correspondent agrees that Wachovia may act upon a Claim received by Wachovia via such other means (e.g. by mail, courier, unauthenticated SWIFT, untested telex) without any responsibility or liability on Wachovia's part for the authenticity of such Claim.

obligation includes any dispute between Correspondent and Wachovia involving the Account and situations where Wachovia becomes involved in any dispute between Correspondent and an authorized signor, another joint owner or a third party claiming an interest in the Account. It also includes any situation where Correspondent, an authorized signor, another joint owner or a third party takes action with respect to the Account that causes Wachovia, in good faith, to seek the advice of counsel, whether or not Wachovia actually becomes involved in a dispute.

## Confidentiality

Wachovia shall treat Correspondent's information with confidence and discretion, but absent any agreement specifically to the contrary, Wachovia and its affiliates reserve the right to exchange among themselves information about Correspondent and its Accounts, to disclose such information to its service providers and to report any relevant information to credit reporting agencies. Wachovia may be required to disclose such information as required by legal and regulatory process or to prevent illegal or fraudulent activities.

Correspondent and, by signing any authorization documentation, all authorized signers and authorized representatives, authorize Wachovia to record telephone or other conversations between them and Wachovia. All decisions to record conversations, and to preserve or destroy such recordings, shall be within Wachovia's sole discretion. Wachovia shall incur no liability by reason of its recording or not recording such conversations, or preserving or destroying such recordings. The authority granted by this provision will survive the termination of these Terms & Conditions or the closing of an Account.

## Termination

Correspondent or Wachovia may close the Account and terminate these Terms & Conditions, and modify or terminate any service at any time without advance notice. Correspondent will receive any finally collected and available balance in its Account within a reasonable period of time after it is closed. Wachovia may return unpaid any items presented on a closed Account. Obligations which by their nature would continue beyond the termination of these Terms & Conditions shall survive the termination of these Terms & Conditions and closing of the Account.

## Applicable Laws

These Terms & Conditions shall be governed by and construed in accordance with the laws and regulations of the United States and the State of New York, including (without limitation) Articles 3, 4, 4A and 5 of the Uniform Commercial Code and New York CLS Dr & Cr § 151, which are all incorporated herein by reference and made a part hereof. Accounts which are inactive for a specified period of time may be subject to escheat under state law. Accounts are subject to

attachment, levy, seizure and garnishment law. Correspondent hereby irrevocably submits to the jurisdiction of the courts of the Borough of Manhattan, New York City, in the State of New York or the federal courts located therein over any action or proceeding arising out of or relating to these Terms & Conditions and irrevocably agrees that all claims in respect of such action or proceeding may be heard or determined in such courts. No legal proceeding may be commenced against Wachovia hereunder unless Correspondent has given Wachovia timely notice and such legal proceeding is commenced within two years after the closing date of the statement covering the period in which the claim arose.

Accounts are also governed by applicable U.S. Federal Reserve Bank rules and its Operating Circulars, the rules of clearing houses and similar associations to which Wachovia may belong, funds transfer system rules, publications of organizations such as (without limitation) the International Financial Services Association, and the International Chamber of Commerce and general commercial bank practices applicable to the services provided in connection with the Account.

## Compliance with Law

Wachovia is a bank organized and existing under the laws of the United States. It intends to comply with all laws and regulations of the United States applicable to it in any of its locations, including without limitation the USA PATRIOT Act, the Trading with the Enemies Act, the International Emergency Powers Act, regulations of the United States Department of the Treasury and the Office of Foreign Assets Control and in its foreign locations to comply with all applicable laws of the host country. Correspondent acknowledges that Wachovia's compliance with laws to which it is subject may affect the types of transactions Correspondent may conduct with or through Wachovia and may require that Correspondent provide or certify information to Wachovia.

**USA PATRIOT Act Notice:** To help the U.S. government fight the funding of terrorism and money laundering activities, U.S. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

## Waiver of Jury Trial

Correspondent and Wachovia each knowingly, voluntarily and intentionally waive any right that they may have to a trial by jury in any litigation in any way based upon, arising out of or related to these Terms & Conditions or the services provided hereunder or under any service description, or any course of conduct or course of dealing by the parties. This provision is a material inducement to Wachovia to provide the Account and the services referred to herein.

9.

## Invalidity of Contract Provisions

In the event any one or more of the provisions of these Terms & Conditions shall for any reason, including under any applicable statute or rule of law, be held to be invalid, illegal or unenforceable, the remaining provisions of these Terms & Conditions shall remain in full force and effect.

## Indemnification

Correspondent agrees to indemnify and hold Wachovia, its successors, assigns, correspondents, directors, officers, employees and agents harmless from and against any and all claims, losses, damages, liabilities and expenses of any nature, including legal expenses and attorneys fees: (1) suffered or incurred by Wachovia by reason of or pursuant to these Terms & Conditions, or the performance of services hereunder, (2) arising from any claim attributable to any act or omission taken by Wachovia based upon reliance on any individual indicated to be authorized to act on behalf of Correspondent in any document (or otherwise authorized by Correspondent) provided by Correspondent to Wachovia and (3) arising from any claim or demand based in whole or in part on an action or omission of Wachovia resulting from a request, direction or instruction from Correspondent. This indemnity will not be effective to relieve and indemnify Wachovia from and against its own gross negligence or willful misconduct. If Correspondent fails to pay any amount when due pursuant to any extension of credit granted in connection with Wachovia's delivery of any of the services described in these Terms & Conditions, unless the parties otherwise agree in writing, Correspondent shall pay interest on any overdue amount before and after judgment at a rate to be determined by Wachovia at its sole discretion.

## Liability

Wachovia's liability, if any, shall be limited to those actual damages which are the direct result of Wachovia's willful misconduct or gross negligence, which shall be determined in accordance with the commercial standards of the U.S. banking industry and applicable laws, rules and regulations. Wachovia is not responsible for any claim arising from non-payment of any item or for loss or delay in any clearing system unless it occurs as a result of willful misconduct or gross negligence by Wachovia or its employees. Damages with respect to electronic funds transfers will be limited to an amount equal to interest on the funds for each day the error or delay remains uncorrected at the applicable Federal Funds rate, i.e., the average of the Federal Funds rates published by the Federal Reserve Bank of New York for each of the calendar days for which interest is payable divided by 360, reduced by a percentage equal to Wachovia's reserve requirement on the Account. Wachovia may at its sole discretion

substitute in lieu of interest an "as of" adjustment method of compensation, i.e., recompute Correspondent's balances for account analysis purposes as if the error or delay had not occurred. If Wachovia is unable to recover all or any part of funds it erroneously transferred from a transferee who has no claim to them, Wachovia's liability will not exceed the amount of funds which Wachovia is unable to recover plus interest as aforesaid. Wachovia shall be subrogated to all rights of Correspondent against third parties and to any rights of a transferee against Correspondent in connection with any claim. In no event shall Wachovia be liable regardless of whether any claim is based on contract or tort, for any consequential, special or indirect losses or damages Correspondent may incur or suffer arising from or in connection with these Terms & Conditions, whether or not the likelihood or possibility of such losses or damages was known to Wachovia in advance.

Wachovia shall not be responsible for any loss or damage resulting from Acts of God, war, riots, terrorism, strikes, civil or industrial disturbance, malfunctions of equipment or other cause beyond Wachovia's control.

## Waiver

Wachovia may waive any of these Terms & Conditions but any such waiver shall apply only to the term or condition waived and only to that occasion and shall not constitute a waiver of any other term or condition.

## Legal Process

Correspondent irrevocably consents to the service of process by personal delivery or overnight courier or registered or certified airmail, postage prepaid, of copies of the summons and complaint or other process (which need be in the English language) to its office shown on its most recent account statement or to its agent for service of process in the United States. Nothing herein affects the right to serve process in any other manner permitted by law.

## Correspondent's Representations, Warranties and Covenants

Correspondent represents and warrants to Wachovia that: (1) All information, including financial information, whenever provided by Correspondent to Wachovia, shall be true, correct and complete. Information relating to Correspondent's financial condition accurately reflects Correspondent's financial condition as of the date(s) thereof; (2) Correspondent is not insolvent within the meaning of 11 USC Section 101 (32); (3) Correspondent is in compliance with all federal, state and local laws, including all laws of the United States and any state thereof applicable to Correspondent's properties, operations,

## US Legal Holidays

business and finances; (4) Correspondent is duly organized and in good standing under the laws of the jurisdiction of Correspondent's organization, and Correspondent has all powers, licenses, authorizations and approvals to operate Correspondent's business as now conducted;

(5) Correspondent will promptly notify Wachovia of the existence of any condition or event which may constitute a breach of or default under these Terms & Conditions; (6) Correspondent will promptly notify Wachovia in writing of (a) any change in Correspondent's financial condition or business; (b) any change in Correspondent's name, address or business structure, ownership or organization; and (c) any material litigation or regulatory action affecting Correspondent; (7) Upon Wachovia's request therefore, Correspondent will promptly deliver to Wachovia true and correct copies of Correspondent's annual report and such other information regarding Correspondent's business affairs and operations including, but not limited to, income statements, balance sheets and statements of cash flows.

### Entire Terms & Conditions

These Terms & Conditions and the documents to which it refers constitute Correspondent's and Wachovia's entire agreement and understanding and supersede all prior terms and conditions. These Terms & Conditions may not be changed orally.

### Use of Correspondent's Account

Correspondent's use of its Account with Wachovia shall constitute Correspondent's agreement to be bound by these Terms & Conditions.

January 1
New Year's Day
January (Third Monday)
Martin Luther King Day
February (Third Monday)
President's Day
May (Last Monday)
Memorial Day
July 4
Independence Day
September (First Monday)
Labor Day
October (Second Monday)
Columbus Day
November 11
Veteran's Day
November (Fourth Thursday)
Thanksgiving Day
December 25
Christmas Day

Business day means a calendar day other than a Saturday or a Sunday, or the dates identified as U.S. Legal Holidays above or any other day on which a U.S. National Bank is authorized or directed to close. If January 1, July 4, November 11 or December 25 falls on a Sunday, the next Monday is not a business day. If January 1 or December 25 falls on a Saturday, the preceding Friday is not a business day.

ERROR: syntaxerror
OFFENDING COMMAND: --nostringval--

**D**



CYBERDRIVEILLINOIS

JESSE WHITE
SECRETARY OF STATE

SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORPORATION FILE DETAIL REPORT

| Entity Name | JOM CORPORATION OF ILLINOIS | File Number | 59772023 |
|---|---|---|---|
| Status | DISSOLVED | | |
| Entity Type | CORPORATION | Type of Corp | DOMESTIC BCA |
| Incorporation Date (Domestic) | 01/22/1998 | State | ILLINOIS |
| Agent Name | MICHAEL E. FRYZEL | Agent Change Date | 01/22/1998 |
| Agent Street Address | 100 W MONROE ST STE 1900 | President Name & Address | LUIS V ECHEVERRIA 8684 AVENIDA DE LA FUENTE #16 SAN DIEGO CA |
| Agent City | CHICAGO | Secretary Name & Address | VOLUNTARY DISSOLUTION 12 29 06 |
| Agent Zip | 60603 | Duration Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2007 |
| Assumed Name | INACTIVE - MAJAPARA-CHICAGO | | |

**Return to the Search Screen**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

E