# Exhibit F

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WACHOVIA BANK, National Association,

        Plaintiff,

    - against -                           Civil Action No. __

MAJAPARA CASA DE CAMBIO S.A. de C.V.,

        Defendants.
-----------------------------------------------------------X

### DECLARATION OF CARLOS A. PEREZ

Carlos A. Perez, declares as follows:

1. I am the Managing Director, Americas Group, Global Financial Institutions & Trade Services for Wachovia Bank, National Association ("Wachovia"). I am fully familiar with the facts set forth herein, and submit this declaration pursuant to 28 U.S.C. §1746, in support of Wachovia's instant application for the award of a pre-judgment attachment and temporary restraints.

### Introduction

2. This is a case that arises out of foreign exchange spot transactions involving more than $70 million (US$) in currency being exchanged between Wachovia and defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara"). The gist of the transaction was that Wachovia would deliver to Majapara 26 million Euros and in exchange Majapara would deliver more than $38 million (US$) to Wachovia's account here in New York. Wachovia delivered the 26 million Euros to Majapara's account, but Majapara never delivered the $38-plus million (US$) to

Wachovia. Not only did Majapara renege on the agreed upon transactions, but it then absconded with Wachovia's money. Thereafter, Majapara admitted to Wachovia that it was now illiquid, that it has engaged in illegal loans in relation to its foreign exchange transactions, and if Wachovia took any steps to enforce their rights, Wachovia would not recover a single dollar. As a result, Wachovia now commences this action to recover the money wrongfully taken by Majapara, as well as make the instant application for pre-judgment attachment of certain Majapara assets believed to be located here in New York.

3. The instant application should be granted because Majapara is a non-domiciliary, has admitted it is illiquid, engaged in inappropriate business activities, and indicated that if Wachovia commences any action Majapara will ensure Wachovia will not be able to recover upon its judgment. Plus, there is an exceedingly strong likelihood that Wachovia will succeed on its claims herein: the deal was to exchange currencies – Wachovia did; Majapara did not.

### Foreign Currency Exchanges

4. Wachovia provides a platform for its customers to trade foreign currencies. The amounts swapped are usually in significant amounts and the off-setting exchanges are done simultaneously. Foreign Exchange contracts are trading contracts that involve minimum documentation. It is the nature of foreign exchange contracts that each counterparty must transmit funds trusting the other to do so simultaneously. Such contracts therefore involve a great deal of trust on each side. A party to a foreign exchange transaction who fails to settle as required is thereby rendered untrustworthy and not deemed suitable for further transactions of this nature. Should such information become public, this party would be unable to engage in such transactions with any substantial institution. Given that foreign exchange is the foundation of Majapara's business, it would not have defaulted under its contract absent substantial economic difficulties, and its default is likely to spell its doom.

### The Majapara Relationship With Wachovia

5.  Majapara is a Mexican corporation and does not maintain any offices in New York. Majapara is in the business of retail and wholesale foreign exchange.

6.  In the late 1990's, Majapara and First Union National Bank ("First Union") (a predecessor to Wachovia) agreed to enter into foreign exchange transactions. As mentioned above, in these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate.

7.  In order to facilitate these exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement ("FX Subscription Agreement"), a copy of which is attached to the Complaint as Exhibit A. Pursuant to this FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions with First Union electronically through First Union's foreign exchange website. The FX Subscription Agreement was not the parties' exclusive method for entering into foreign exchange transactions.

8.  In 2002, First Union and Wachovia merged.

9.  In some of the foreign exchange transactions between Majapara and Wachovia, Wachovia would deliver currency to Majapara to an account designated by Majapara. On that same day, Majapara would transfer the agreed upon counter-currency into a Majapara account maintained by Wachovia in New York (the "Majapara NY Account"). Upon the opening of the Majapara NY Account, Wachovia's Terms & Conditions For Global Financial Institutions ("Wachovia's Terms & Conditions"), amongst other documents, governed all of the parties'

business relationships and dealings. A copy of Wachovia's Terms & Conditions is annexed hereto as Exhibit A.

10. Wachovia would then debit the currency from the Majapara NY Account. The authorization for this procedure was documented in a December 10, 2003 letter, in Spanish, from Majapara to Wachovia. A copy of which is attached to the Complaint as Exhibit B. I speak and read Spanish fluently and the note translates as: "In relation to the transactions done with yourselves through Online FX; we authorize you to debit and credit our account number NY2000192304201 held with yourselves."

11. In or about March 2006, Majapara signed a Debit and Netting Agreement that gave Wachovia the same authority to credit and debit the same Majapara Account. A copy of this document is attached to the Complaint as Exhibit C.

### The Foreign Exchange Transactions At Issue

12. On or about December 5, 2007, Majapara and Wachovia agreed to do a series of seven (7) transactions, all of which were to be settled on December 7, 2007. Six (6) of those transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed through an interface system operated by Reuters to which both Majapara and Wachovia have access. A copy of wire transfer confirmations for each of these transactions is attached to the Complaint as Exhibit D. As detailed on those confirmations, Majapara was to deliver all of the counter-currency (US$) into its Majapara NY Account. Wachovia was to then simply debit that New York account.

13. Pursuant to the parties' agreement, the seven (7) foreign exchange transactions were to close on December 7, 2007. Accordingly, on December 6, 2007, Wachovia sent 30,300,000 Euros, $112,900.03 and 7,000 Swiss Francs to Majapara's account in Munich,

Germany. Even though they had just entered into the deals the prior day (December 5, 2007), Majapara did not deliver the agreed upon $38,737,100, 127,000 Swiss Francs and $6,218.90 to Wachovia, as required, so that the transactions could settle on December 7, 2007.

14. To date, Majapara has not transferred any amount owed pursuant to these exchange transactions.

15. On December 11, 2007, however, as was its right under Wachovia's Terms & Conditions, Wachovia was able to secure, as an offset to the debt owed, $9,460,000 Majapara attempted to transfer out of Wachovia to a Majapara account located in Citibank in New York. Accordingly, the total debt owed by Majapara to Wachovia is reduced based upon this offset. Wachovia was also able to secure an additional $3,960,155.00 in offset funds against the amount owed by Majapara. The total debt owed from those transactions is $24,711,845.00.

### Majapara Is Illiquid And Intends to Frustrate Wachovia's Recovery Herein

16. After Majapara defaulted, my department made contact with Majapara to demand payment and to get an explanation why it did not pay Wachovia as it was required to do. On Thursday, December 13, 2007, at approximately 9:52 am Eastern, I spoke by telephone with Jorge Ortiz, Majapara's Chairman and CEO. I know Mr. Ortiz well and have met with him and spoken to him many times. I was joined in the telephone call by Juanita Gomez, a Vice President in my group who is our Mexico representative.

17. I asked Mr. Ortiz in our call what Majapara did with Wachovia's money. Mr. Ortiz acknowledged and admitted that Majapara was obligated to provide the agreed upon currency to Wachovia and owed Wachovia over $30 million. He then stated that Majapara had received Wachovia's Euros and used them for other purposes because it was experiencing "a liquidity crisis."

18. I then asked him if he lent the money to third parties. He said "yes." I said, "That's not legal." He said: "I recognize that we have done something that is not permitted" -- Majapara is a Mexican "Casa de Cambio," a company in the business of currency exchange, such as exchanging Mexican pesos for dollars, and as such, under Mexican law, is not permitted to make loans.

19. I then asked Mr. Ortiz when Majapara would be able to repay Wachovia. He said that he "needed time to collect the money from others who he had lent Wachovia's money to." He said Majapara "would need two months to collect." Based on this conversation, it is my belief that Majapara engaged in a fraud with respect to the foreign exchange spot transactions Majapara engaged in with Wachovia. Due to its "liquidity crisis," Majapara did not have sufficient funds to complete the exchange with Wachovia and to engage in the other lending or other activities.

20. Based upon Majapara's recent statements, it knew of its condition prior to the Wachovia transactions closing, but, nonetheless, accepted Wachovia's funds, knowing that it would not have the funds to repay Wachovia at the close. Majapara then used Wachovia's funds to engage in illegal lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

21. Mr. Ortiz told me that if Wachovia took legal action against Majapara, Wachovia would end up with nothing.

### New York Bank Accounts

22. Being the relationship manager for Majapara, I am aware of a bank account Majapara maintains (or did maintain) at Citibank located in New York City. The account

number is 36254838. I also have a good faith belief that Majapara maintains (or maintained) bank accounts at other banks in New York as well. Those banks are JP Morgan Chase and Bayerische Hypo- und Vereinsbank, AG.

### Undertaking

23. Wachovia stands ready to secure a bond (or any other acceptable undertaking to the Court) in an amount set by this Court. Wachovia respectfully requests that the amount of any undertaking be set upon identification of the actual amount to be attached and then in a reasonable amount.

24. No prior application for the relief requested herein has been made to this or any Court

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of December, 2007.

_____
Carlos A. Perez