# Exhibit C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

WACHOVIA BANK,                                   )
NATIONAL ASSOCIATION,                            )
                                                 )
            *Plaintiff,*                          )
                                                 )        Case No.
            v.                                    )
                                                 )
MAJAPARA CASA DE CAMBIO S.A. de C.V.,            )
a Mexican corporation,                           )
                                                 )        2007L013958
            *Defendant,*                          )        CALENDAR/ROOM T
                                                 )        TIME 00:00
HARRIS, N.A., an Illinois corporation,           )        Other Com Litigation
                                                 )
            *Garnishee.*                          )

## NOTICE OF EMERGENCY MOTIONS

PLEASE TAKE NOTICE that on December 14, 2007, at 9:15 a.m., or as soon thereafter as counsel may be heard, we shall appear before The Honorable Judge Alexander P. White, or any judge sitting in his stead, in the courtroom usually occupied by him in Room 2503 of The Richard J. Daley Center, Chicago, Illinois, for presentation of Plaintiff's Emergency Motion for Issuance of Order of Attachment and Ex-Parte Motion for Appointment of Special Process Server, copies of which are attached hereto and previously filed on December 14, 2007.

Dated: December 14, 2007

                                        Respectfully submitted,

                                        WACHOVIA BANK, N.A...


                                        By: _____
                                            One of Its Attorneys


Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000
Firm I.D. # 43456

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

WACHOVIA BANK,                          )
NATIONAL ASSOCIATION,                   )
                                        )
        Plaintiff,                      )
                                        )        Case No.
        v.                              )
                                        )
MAJAPARA CASA DE CAMBIO S.A. de C.V.,   )
                                        )        2007L013905
        Defendant,                      )        CALENDAR/ROOM  7
                                        )        TIME 00:00
HARRIS N.A.,                            )        Other Com Litigation
                                        )
        Garnishee.                      )

## PLAINTIFF'S EMERGENCY MOTION FOR ISSUANCE OF ORDER OF ATTACHMENT

Plaintiff Wachovia Bank, N.A. ("Wachovia"), through its attorneys, Reed Smith,

LLC, and pursuant to 735 ILCS 5/4-101 *et seq.* of the Code of Civil Procedure hereby

requests that this Court immediately grant Wachovia's motion for issuance of an Order of

Attachment in accordance with §4-110 of the Attachment Act, directed to and seizing any and

all property and accounts in the name of or for the benefit of defendant Majapara Casa De

Cambio S.A. de C.V. ("Defendant") held at or in the possession, custody or control of the

named garnishee herein, Harris Bank, located at 111 West Monroe, Chicago, Illinois,

including but not limited to Bank Account Number 2004919. In support thereof, Wachovia

states as follows.

**I.    FACTUAL BACKGROUND TO ISSUANCE OF ORDER OF ATTACHMENT.**

This case involves the Defendant, Majapara Casa De Cambio S.A. de C.V.

("Majapara" or "Plaintiff"), a Mexican company, having taken from Wachovia over

$38,000,000.00 worth of Euros in a series of foreign exchange transactions and failing to

return the corresponding amount of U.S. Dollars. Defendant agreed with Wachovia on

Wednesday, December 5, 2007 to send Wachovia $38,132,700 (US$) in return for 26 million Euros. Yet on the agreed upon settlement date, December 7, 2007, Defendant received the 26 million Euros from Wachovia knowing it would not pay Wachovia the corresponding $38,132,700. Defendant has not provided Wachovia with the promised $38,132,700 (US$), nor has it returned the 26 million Euros Wachovia provided Defendant, thereby prompting the need for extraordinary relief in the form of a prejudgment attachment to protect Wachovia from further potential catastrophic loss.

Commencing in the late 1990's or early 2000's, Wachovia, and its predecessor, entered into a series of foreign exchange agreements with Defendant, a resident of the country of Mexico. (*See* Affidavit in Support of Attachment, filed concurrently herewith).[1] In these transactions, Defendant would agree to purchase from Wachovia (or its predecessor) a certain amount of one currency in exchange for Defendant selling to Wachovia an equivalent amount of another currently, at the applicable exchange rate then in effect.[2]

To facilitate the foreign exchange agreement process, Defendant and Wachovia, or its predecessor, entered into a written contract pursuant to which Defendant was permitted to execute foreign exchange transactions with Wachovia's predecessor over the Internet. By custom in the foreign exchange industry, these transactions are agreed to and close quickly and, as such, the foreign exchange industry is built on trust. If a party in a foreign exchange transaction fails to honor its contractual obligation in terms of delivering the promised currency by the settlement date, that party is deemed untrustworthy.

---

[1] The Facts recited in this Motion are supported by Wachovia's Affidavit, filed pursuant to §4-105 of the Attachment Act.

[2] Defendant is a non-Illinois resident. Nothing in the Illinois Secretary of State' records reflect that Defendant is currently licensed or authorized to conduct business in Illinois; nor do these records reflect that Defendant has currently procured a certificate of authority to conduct business in this State.

On or about December 5, 2007, Defendant entered into seven such foreign exchange transactions with Wachovia, which, when combined, were worth over $38 million United States dollars. All seven foreign exchange transactions were to have settled by December 7, 2007. Six of those transactions were executed through Wachovia's foreign exchange internet website. The one remaining transaction was executed over the telephone. As required by the seven foreign exchange transactions, on December 7, 2007—the scheduled settlement date—Wachovia sent Defendant 26 million Euros. Despite having entered into the transactions with Wachovia just two earlier, on December 5, 2007, Defendant never delivered the corresponding agreed upon $38,132,700 (US$) to Wachovia, as required, on December 7, 2007. After certain setoffs are applied in Defendant's favor, Wachovia has suffered a loss of $24,711,845.

Defendant's intentional act in accepting over $38 million worth of Euros with no intention of delivering the corresponding dollars shows their fraudulent conduct. But Wachovia has learned additional facts that lead it to believe Defendant is intentionally concealing or disposing of its assets or is about to do so. First, on or about December 7, 2007—the settlement date for the foreign exchange transactions at issue—Defendant requested that Wachovia enter into *further* cash transactions. Defendant made this request despite the fact that, by this point in time (December 7th), Defendant already knew it was *not* going to settle the outstanding foreign exchange transactions with Wachovia worth over $38 million. Second, on or about December 11, 2007, Majapara tried (unsuccessfully) to transfer over $9 million out of its Wachovia account. Finally, on or about December 13, 2007, a representatives of Wachovia spoke with Jorge Ortiz, the Chairman and CEO of Defendant. Mr. Perez told these representatives that Defendant took Wachovia's 26 million Euros and lent

it to other people even though, under Mexican law, a Casa de Cambio does not have a right to lend money. When Mr. Ortiz was told that what Defendant had done was not legal, Mr. Ortiz told the Wachovia representatives that Majapara was not liquid and he would need two months to repay Wachovia. He also told the representatives that if Wachovia took action to assert its legal rights, Wachovia would not recover anything. In addition, after Majapara failed to pay its obligation to Wachovia, Defendant attempted to drain its remaining assets in its Wachovia depository account, transferring them to Citibank, N.A.

For the past several years, and to Wachovia's knowledge, Defendant has regularly utilized the banking facilities of Harris Bank, located at 111 West Monroe Street, Chicago, Illinois ("Harris Bank"), for the purpose of furthering its foreign exchange business in this country. To Wachovia's knowledge, Defendant currently maintains one or more banking account at the Harris Bank in Chicago. At least one Bank Account at Harris Bank exists in Defendant's name under Account Number 2004919, thereby making this case ripe for the issuance of an order of attachment directed against Defendant and all its property now being held at Harris Bank. On information and belief, Defendant also engages in substantial and continuous business in Chicago.

## II. THE ELEMENTS FOR ISSUANCE OF AN ORDER OF ATTACHMENT ARE PRESENT, WARRANTING AN ATTACHMENT BE ISSUED ON DEFENDANT'S PROPERTY AT HARRIS BANK.

Wachovia requests that this Court enter an emergency order of attachment under the applicable provisions of the Attachment Act (735 ILCS 5/4-101 *et seq.*) directed to Defendant and any and all banking accounts or other property of any kind or nature kept or maintained at Harris Bank, in Chicago. In particular, that this Court enter an order of attachment directed to Defendant and Harris Bank, Account Number 2004919, or any other accounts or property maintained thereat by Defendant. *See also*, §4-126 of Attachment Act (attachment of debtor's property held by others). Wachovia has satisfied each of the requisite elements for issuance of such an Order.

There are, essentially, two central components that need be satisfied before the Court is empowered to issue an order of Attachment: (1) "cause" under §4-101 of the Act must be shown by demonstrating the existence of one of the nine statutory factors, and (2) the creditor need post a bond in the amount set forth in §4-107 (or, §4-108, if the value of the property being seized is ascertained at the time). Wachovia has satisfied both prongs, warranting the issuance of the Order against Defendant and Harris Bank.

### A. The Presence of "Cause" Under §4-101(1) Supports An Attachment Order Because Defendant Indisputably Is Not An Illinois Resident.

Several overriding principles support entry of an Attachment Order. *First,* attachment is the legal process by which the court seizes and holds the property of the defendant debtor until the rights of the parties are ultimately determined in the creditor's principal suit. *See, Peter Fischer Import Motors, Inc. v. Buckley,* 121 Ill. App. 3d 906, 910, 460 N.E.2d 346, 349 (1st Dist. 1984); *Old Kent Bank v. Stoller,* 254 Ill. App. 3d 1085, 1092, 627 N.E.2d 265,

273 (1st Dist. 1993); *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026, 793 N.E.2d 900, 905 (1st Dist. 2003). Attachment may be directed at either the defendant's property "or his property in the possession of a third party." *Peter Fischer Imports*, 121 Ill. App. 3d at 910, 460 N.E.2d at 349. Attachment is a mechanism instituted "before judgment on the merits of the principal claim of the plaintiff creditor." *Id.* Thus, attachment lies to seize property of the debtor in the possession of a third party, garnishee. In such a situation,

> "...**the plaintiff attempts to hold the defendant's property in the possession of a third party pending the disposition of the plaintiff's principal claim against the defendant.** Such a proceeding is actually a pre-judgment proceeding in attachment, where the defendant's property which is attached is in the possession of a third party."

(*Peter Fischer Imports*, 121 Ill. App. 3d at 910, 460 N.E.2d at 345.)[3]

*Second*, the Attachment Act specifically provides that the Act shall be construed in a "*liberal* manner for the detection of fraud." *See* §4-102. "The statute was one intended to prevent fraud and must be liberally construed, and the courts should give it a reasonable construction in order to attain that end." *Dodge v Yates*, 21 Ill. App. 547, 1886 WL 5713, at *3 (2d Dist. 1886). Recent caselaw confirms this approach. *See, Old Kent Bank*, 254 Ill. App. 3d at 1097, 627 N.E.2d at 272 ("...section 4-102 of the Act requires a court to construe the attachment statute 'in the most liberal manner for the detection of fraud.'"). That liberal construction animating the Act bolsters supporting the issuance of the Order, since Wachovia claims, in part, that the actions of Defendant were fraudulent in misappropriation of Wachovia's monies.

---

3 All emphasis is added unless otherwise noted.

*Third,* since the Attachment Act clearly empowers the Court to seize the property of the debtor (the Defendant, herein) in the possession of a third party (here, Harris Bank), the next issue is whether Wachovia has satisfied the underlying grounds for issuance of an Attachment Order. The Act unambiguously provides it has. Section 4-101 of the Act lists the nine specific grounds needed for issuance of an Attachment Order, only one of which, though, need be satisfied to show the requisite "cause". *See, Old Kent Bank,* 254 Ill. App. 3d at 1094, 627 N.E.2d at 270 ("We first consider whether *any* of the provisions of section 4-101 of the Act were satisfied.") Section 4-101(1) provides Wachovia with such a statutory ground and states as follows:

"Where the debtor is not a resident of this State."

Here, the Defendant-debtor falls within the meaning of §4-101(1) of the Act, as it is *not* an Illinois resident. Instead, Defendant is a resident of and is located in Mexico City, Mexico. Defendant does not qualify as an Illinois "resident" since the Illinois Secretary of State records do not reflect it being currently authorized to do business in Illinois or having a current certificate of authority as a foreign corporation.

Two other statutory grounds support issuance of the Order of Attachment. Section 4-101(7), (8) states as follows:

"7.    Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors."

"8.    Where the debtor is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors."

Here, the Affidavit submitted by Wachovia attests that, after Defendant had received Wachovia's Euros, Defendant improperly used that same money for purposes of alleviating the Defendant's alleged "liquidity crisis," rather than ensuring that Wachovia be paid in corresponding currency, as was required under the parties' foreign exchange agreements. The Affidavit specifically points out Defendant's intent to frustrate and hinder Wachovia from collecting any of its millions of dollars owed to it by Defendant if Wachovia elects to enforce its rights with respect to the transactions at issue. As noted by one Illinois appellate court: "The proper inquiry under the [Attachment] statute is whether [defendant's] actions were made with the intent to hinder or delay plaintiff." *Amcore Bank, N.A., Rock River Valley v. Hahnaman-Albrecht, Inc.*, 305 Ill. App. 3d 63, 710 N.E.2d 435, 438 (2d Dist. 1999). The submitted Affidavits clearly confirm this to have been the case given Defendant's improper disposition of its assets in an effort to frustrate Wachovia from receiving its entitled payment, Defendant's acknowledgement that it used Wachovia's Euros to make illegal loans, Defendant's statement that it is illiquid, and Defendant's attempt to take over $9 million out of its Wachovia account.

Nor is there any question that the *type of claim* to be asserted by Wachovia in its principal lawsuit against Defendant falls within the express language of §4-101. That provision empowers the court to issue an Order of Attachment when "a creditor ha[s] a money claim, whether liquidated or unliquidated, in contract or tort...." Wachovia has alleged such a claim in its Affidavit. Wachovia asserts that it has a claim against Defendant for money based in contract on either a liquidated or unliquidated amount.

Wachovia, therefore, has satisfied both key prongs under §4-101 for showing "cause" to issue an Order. Wachovia has shown that (a) Defendant is not an Illinois resident for

- 8 -

purposes of §4-101(1), and (b) its underlying claim to be asserted in the principal complaint sounds in "contract" for a "liquidated or unliquidated" amount. Given these twin facts, Wachovia has satisfied the requisite "cause" under §4-101 for issuance of an Order of Attachment. Indeed, Illinois courts have upheld the issuance of an order of attachment under §4-101 of the Act based, among other grounds, upon finding that a claim for monies due under a promissory note (the contract claim for a liquidated amount), when coupled with the debtor's non-Illinois residency (§4-101(1)). *See Old Kent Bank*, 254 Ill. App. 3d at 1094-1097, 627 N.E.2d at 270-272.

B.   **Wachovia Has Satisfied The Bond Requirement Under Section 4-107 Of The Attachment Act.**

The second key component that need be satisfied for issuance of an Order of Attachment is the posting of the requisite bond under §4-107 (or, potentially, under §4-108 if the circumstances warrant.) Wachovia stands ready, willing and able to duly satisfy that requirement.

III.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff, Wachovia Bank, N.A., prays that this Court grant its Emergency Motion For Issuance of Order of Attachment, and enter an Order of Attachment directed against Defendant Majapara Casa De Cambio S.A. de C.V., and Harris Bank in Chicago, as more particularly described in the concurrently filed Affidavit.

Dated: December 14, 2007

Respectfully submitted,
*WACHOVIA BANK, N.A.*
Plaintiff,

By: _____
One of Its Attorneys

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH
10 S. Wacker Drive
Chicago, IL 60606

Attorneys for Plaintiff

CHILIB-2126850.2

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

|  |  |  |
|---|---|---|
| WACHOVIA BANK, N.A., | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 2007L018958 |
| MAJAPARA CASA DE CAMBIO S.A. de C.V., | ) | CALENDAR/ROOM TI |
| | ) | TIME 00:00 |
| Defendant, | ) | Other Com Litigation |
| | ) | |
| Harris, N.A., a National Association, | ) | |
| | ) | |
| Garnishee. | ) | |

### AFFIDAVIT OF CARLOS A. PEREZ

I, Carlos A. Perez, being first duly sworn upon oath state as follows:

1.    I have personal knowledge of the facts contained herein and, if called upon as a witness, I could and would competently testify thereto.

2.    I am Managing Director, Americas Group, Global Financial Institutions & Trade Services, Wachovia Bank, N.A. ("Wachovia"). Wachovia has its principal place of business in Charlotte, North Carolina.

3.    Majapara Casa de Cambio S.A. de C.V. ("Majapara"), a Mexican corporation, is a customer of my group.

4.    Majapara resides and is located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico.

5.    This Affidavit of Attachment is being brought in relation to the misappropriation of over $38 million by Majapara, through a series of foreign exchange transactions between the parties.

6.     On Wednesday to December 5, 2007, Majapara agreed with Wachovia to a series of foreign exchange transactions by which Wachovia would send Majapara 26 million Euros in return for Majapara sending Wachovia 38,132,700 U.S. Dollars at the applicable exchange rate. Each side was required to transmit the funds on December 7, 2007.

7.     Wachovia sent Majapara the agreed 26 million Euros on or about 2 am on December 7, 2007.

8.     Despite receiving and accepting over $38 million Wachovia's funds, Majapara has not provided Wachovia with the promised $38,132,700 (US$).  Nor has Majapara returned the 26 million Euros Wachovia provided to it.

9.     Majapara has an account with Harris Bank in Chicago and on information and belief, its engages in continuous and substantial business in Chicago.

10.    Majapara is in the business of "foreign exchange."

11.    Foreign Exchange contracts are trading contracts that involve minimum documentation.  It is the nature of foreign exchange contracts that each counterparty must transmit funds trusting the other to do so simultaneously.  Such contracts therefore involve a great deal of trust on each side.  A party to a foreign exchange transaction who fails to settle as required is thereby rendered untrustworthy and not deemed suitable for further transactions of this nature. Should such information become public, this party would be unable to engage in such transactions with any substantial institution.  Given that foreign exchange is the foundation of Majapara's business, it would not have defaulted under its contract absent substantial economic difficulties, and its default is likely to spell its doom.

12.    Thus, in order to protect its rights, Wachovia seeks an attachment of a bank account Majapara keeps at Harris Bank.

13.    As background, since 1998, Majapara and First Union National Bank (a predecessor to Wachovia) agreed to enter into foreign exchange transactions together.  In these

2

transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate.

14.     In order to facilitate Majapara and First Union National Bank ("First Union") entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement, a copy of which is attached hereto as Exhibit A.  Pursuant to this FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions with First Union over the Internet through First Union's foreign exchange website.  The FX Subscription Agreement did not preclude the parties from entering into foreign exchange transactions with each other in other manners.    This FX Subscription Agreement is governed by New York Law.  See Exhibit A ¶ 6.

15.     In September 2001, First Union Corporation and Wachovia Corporation merged. As a result of the merger, the FX Subscription Agreement was assigned to Plaintiff Wachovia Bank, N.A.

16.     On or about December 5, 2007, Majapara and Wachovia agreed to do a series of seven (7) transactions, all of which were to be settled on December 7, 2007, whereby Wachovia would deliver 26 million Euros to Majapara and Majapara would deliver $38,132,700 to Wachovia.  Instead of the dollars being deposited into Majapara's account at Wachovia and then Wachovia debiting the currency from the Majapara account, these transactions required Majapara to transfer dollars directly to Wachovia at a Wachovia-owned New York branch account.  Six (6) of the transactions were executed on Wachovia's foreign exchange internet website.  One (1) of the transactions was executed over the telephone.  A copy of confirmations of each of these transactions is attached hereto as Exhibit B.

3

17.    Pursuant to the seven (7) foreign exchange agreements, on December 7, 2007, Wachovia sent 26 million Euros to Majapara. Even though they had just entered into the deals two days earlier on December 5, 2007, Majapara did not deliver the agreed upon $38,132,700 to Wachovia, as required, on December 7, 2007.

18.    Despite its failure to deliver the dollars, Majapara continued to try to place additional trades with Wachovia on December 7, 2007, even though it knew it could not cover such additional trades or its obligation to deliver the dollars.    Wachovia was able to stop such additional trades from being executed.

19.    In addition, on December 11, 2007, two deposits came into Majapara's Wachovia account totaling $9,460,000.    Despite owing a multiple of this amount to Wachovia, Majapara sent instructions to Wachovia on December 11, 2007 to forward those funds to Majapara's account at Citibank. This action, essentially, would have cleaned out all of Majapara's assets in its Wachovia account.

20.    By opening an account at Wachovia, however, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which includes a provision providing Wachovia with setoff rights. See Terms and Conditions, attached hereto as Exhibit C. Through its setoff rights, Wachovia was able to prevent Majapara from draining the account, and obtained funds to compensate it for its loss, leaving $24,711,845 now due.

21.    In addition, Wachovia has additional exposure to Majapara to cover returned items in the federal check claims process (bounced checks), which may aggregate as to Majapara over $3 million per month, into the future.

22.    After Majapara defaulted, my department made contact with Majapara to demand payment and to understand why Majapara did not pay Wachovia, as it was required to do.

4

23.   On Thursday December 13, 2007 at approximately 9:52 am Eastern, I spoke by telephone with Jorge Ortiz, Majapara's Chairman and CEO.   I know Mr. Ortiz well and have met with him and spoken to him many times.  I was joined in the telephone call by Juanita Gomez, a Vice President in my group who is our Mexico representative.

24.   I asked Mr. Ortiz in our call what Majapara did with Wachovia's money.

25.   Mr. Ortiz acknowledged and admitted that Majapara was obligated to provide the agreed upon currency to Wachovia and owed Wachovia over $30 million.

26.   He then stated that Majapara had received Wachovia's Euros and used them for other purposes because it was experiencing "a liquidity crisis."

27.   I then asked him if he lent the money to third parties.  He said "yes."

28.   I said, "That's not legal."

29.   He said:  "I recognize that we have done something that is not permitted."

30.   Majapara is a Mexican "Casa de Cambio," a company in the business of currency exchange, such as exchanging Mexican pesos for dollars.  Such companies, under Mexican law, are not permitted to make loans.

31.   I then asked Mr. Ortiz when Majapara would be able to repay Wachovia.

32.   He said that he "needed time to collect the money from others who he had lent Wachovia's money to." He said Majapara "would need two months to collect."

33.   Based on the above information, it is my information and belief that Majapara engaged in a fraud.  Due to its "liquidity crisis," Majapara did not have sufficient funds to complete the exchange with Wachovia and to engage in the other lending or other activities.   It nonetheless accepted Wachovia's funds, knowing that it would not have the funds to repay Wachovia for a lengthy period of time, if at all.  It then used Wachovia's funds to engage in

illegal lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

34. Mr. Ortiz told me that if Wachovia took legal action against Majapara, Wachovia would end up with nothing.

35. Under Wachovia's Terms & Conditions for Global Financial Institutions, the terms and conditions are governed by and construed in accordance with the laws of New York and Majapara agreed to submit to the jurisdiction of the courts located in Manhattan, New York.

36. For the reasons stated above, Wachovia has a just claim against Majapara.

37. I believe that Wachovia is entitled to recover against Majapara, after allowing all just credits and set-offs, $24,711,845, which is now due. I further expect that Majapara will have additional amounts owing to Wachovia for returned items, as described above.

38. I have good reason to believe and do believe that Majapara is not a resident of this State and is, instead, a resident of Mexico.

39. Further, for the reasons stated above, including the fact that Majapara accepted 26 million Euros from Wachovia without any intention of completing their end of the transaction, tried to get Wachovia to continue to trade with it on December 7, 2007 when they clearly knew they could not fulfill their end of any trade, tried to quickly take funds that were deposited in its Wachovia account and have them transferred to their Citibank account, admitted to me and Ms. Gomez that Majapara was illiquid, and stated that if Wachovia moved to assert its legal rights, it would not recovery anything, Wachovia has good reason to believe and does believe that Majapara either has already fraudulently concealed or disposed of its property so as to hinder or delay its creditors or is about to conceal, assign, or otherwise dispose of its property or effects, so as to hinder or delay its creditors.

**FURTHER AFFIANT SAYETH NOT.**

6

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in the foregoing Affidavit are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed this 13th day of December 2007 in Miami, Florida.

By: _____
Carlos A. Perez

Signed and sworn to before me
this 13th day of December 13, 2007


Notary Public

CHI1LIB-2126822.3

```
ELENA PEREZ CAPIRO
MY COMMISSION # DD 705363
EXPIRES: August 15, 2011
Bonded Thru Notary Public Underwriters
```

7